1      IN THE CHANCERY COURT OF HARRISON COUNTY, MISSISSIPPI

2                    FIRST JUDICIAL DISTRICT

3

4

5    ESTATE OF JESSIE LEE WILLIAMS

6                                    CAUSE NO. C2401-06-346

7

8

9                    TRANSCRIPT OF HEARING

10                      MARCH 2, 2006

11

12

13    ============================================================

14    TRANSCRIPT OF THE HEARING HAD IN THE ABOVE STYLED AND

15    NUMBERED CAUSE BEFORE THE HONORABLE JIM PERSONS,

16    CHANCELLOR OF THE EIGHTH CHANCERY COURT DISTRICT OF

17    MISSISSIPPI, ON MARCH 2, 2006, IN GULFPORT,

18    MISSISSIPPI.

19    ============================================================

20

21

22

23

24

25

GP-1

1    THE COURT:  All right.  We're on the

2    record this morning in the case of -- or the

3    matter of the estate of Jessie Lee Williams,

4    deceased.  Mr. Crosby and, I take it now, Mr.

5    Whitfield is in this matter.

6        Before the Court are two motions:  One, a

7    motion by the sheriff of Harrison County to

8    quash a subpoena duces tecum; the other, a

9    motion by the City of Gulfport to quash a

10   subpoena duces tecum served upon its chief of

11   police for certain records and videos

12   surrounding an incident that occurred at the

13   jail, which, as I understand it, the estate of

14   Jessie Lee Williams claims led to the death of

15   Mr. Williams.

16       I will ask for the counsel, for purposes

17   of the record, to state their appearances,

18   please, starting over here with Mr. Whitfield.

19       MR. WHITFIELD:  Your Honor, John

20   Whitfield here, along with Mr. Crosby, on

21   behalf of the estate of Jessie Lee Williams.

22   And we have here with us Mr. Terry Williams,

23   the administrator of the estate.

24       THE COURT:  All right, sir.

25       MR. FANECA:  Your Honor, I'm Cy Faneca,

1    with the firm of Dukes, Dukes, Keating &

2    Faneca, appearing on behalf of the sheriff of

3    Harrison County.

4            THE COURT:  All right.

5            MR. FANECA:  This is my associate,

6    Haley --

7            MS. BROOM:  -- Broom.

8            THE COURT:  Welcome.

9            MR. BRUNI:  Your Honor, my name is Jeff

10    Bruni, and I'm here on behalf of the City of

11    Gulfport and its chief of police.

12            THE COURT:  All right.  And I note that

13    Ms. Dodson, an assistant district attorney,

14    together with Mr. Woods, are in the courtroom.

15            The pleadings provided to me by the -- or

16    filed by the City and/or the sheriff reference

17    that the matter is under investigation by the

18    Federal Bureau of Investigation, the

19    Mississippi Highway Patrol, and the District

20    Attorney's Office, I believe.

21            MR. FANECA:  That is correct, Your Honor.

22            THE COURT:  So what I would like to ask

23    as a threshold matter is what notice, if any,

24    was given to the United States Attorney

25    regarding this hearing today?

1          MR. CROSBY:  Your Honor, we did not give

2      any notice to the United States Attorney.  We

3      felt like it was simply a matter that we serve

4      subpoenas on the sheriff and the City of

5      Gulfport Police Department.  We did not ask

6      for their presence.  We've not been given any

7      official notice that they're involved in the

8      case.

9          And I have communicated with them.  The

10      communication has been initiated by me, and

11      they've not requested to be notified

12      concerning any matter.

13          THE COURT:  Is the Federal Bureau of

14      Investigation investigating this matter?

15          MR. CROSBY:  And I had a meeting with an

16      agent in my office, Dwight Johnson, a

17      representative of the FBI.  And I introduced

18      him to the first witness that came to my

19      attention in the matter as soon as he did come

20      to my attention.  And I provided them with

21      medical authorizations so that they could

22      obtain medical records on their own, but they

23      have not asked to be -- asked for any further

24      notice or any involvement in the case.  And

25      they are very independently operating.

1        THE COURT:  They normally do.

2        MR. CROSBY:  Yes, sir.

3        THE COURT:  All right.  Mr. Faneca and

4    Mr. Bruni, do you have any information

5    concerning whether or not the U.S. Attorney or

6    the FBI would be interested in the outcome of

7    this case?

8        MR. FANECA:  Your Honor, I would defer to

9    the district attorney's office.  I have Miss

10   Lisa Dodson here, who could speak to that.  It

11   is my understanding it is a coordinated

12   investigation involving Harrison County

13   district attorney's office, the Mississippi

14   Highway Patrol, and the Federal Bureau of

15   Investigation.  In fact, I think that is even

16   -- if my memory serves me correctly, that is

17   acknowledged by counsel opposite in some of

18   his pleadings.

19        THE COURT:  Ms. Dodson.

20        MS. DODSON:  Judge, that is correct.  The

21   matter is currently under investigation by our

22   office, as well as the Mississippi Bureau of

23   Investigation.  I know the FBI and the U.S.

24   Attorney's Office generally do not acknowledge

25   what they're investigating or what they're

1       doing; however, they are involved.  We are

2       coordinating with them.  And at some point, I

3       feel that one or the other entity will speak

4       to this matter as it does generally through

5       its grand jury.

6           THE COURT:  All right.  I'm going to ask

7       -- I don't know who I'm going to ask, but I

8       think I'll ask Ms. Dodson in the presence of

9       Mr. Crosby and counsel for the sheriff and

10      police department.  We will recess, and during

11      that recess, I will ask that you call the

12      United States Attorney and advise him of this

13      hearing, as to whether or not they wish to be

14      present.  All right?

15          MS. DODSON:  I'll do that, Your Honor.

16          THE COURT:  Thank you.  We'll be in

17      recess until you notify the bailiff you're

18      ready to resume one way or the other.

19   (OFF THE RECORD.)

20          THE COURT:  All right, Ms. Dodson.

21          MS. DODSON:  Judge, Mr. Wood did attempt

22      to call and was unable to reach Mr. Lampton or

23      Mr. Lacey or anyone else in the office, I

24      believe -- or any other attorney in the

25      office.  But he did have a conversation with

1        Mr. Lacey a couple of days ago, and I'll let

2        him relate that to the Court.

3            MR. WOOD:  Yes, sir.  When we left during

4        the recess, Judge, I tried to contact Dunn

5        Lampton, who's out of town for the rest of the

6        week.  I also tried to contact Jack Lacey, who

7        is the Assistant U.S. Attorney that we've been

8        speaking to with regard to this investigation,

9        who's also in court today in Jackson.  I also

10       asked for the chief of their criminal section,

11       a John Dowdy, who was out of the office, also.

12           But I did speak with Jack Lacey on

13       Monday, and he was aware that these subpoenas

14       had been filed last week.  And I have spoken

15       with him on this past Monday and explained to

16       him that there would be a hearing set today on

17       these motions that had been filed by the City

18       of Gulfport and the Harrison County Sheriff's

19       Department.  And he didn't express any

20       interest in being here.  I just wanted to

21       notify him that they were set today, and he

22       didn't indicate that they would be sending a

23       representative or had any interest in sending

24       a representative.

25           THE COURT:  All right.  We'll proceed

1    then.

2         May I ask at the outset if the district

3    attorney wishes to state its position with

4    regard to the matters which have been

5    requested in the subpoena duces tecum?

6         MS. DODSON:  Judge, at this time our

7    position -- Of course, we have not been served

8    with a subpoena, but we would object to the

9    release of these items simply because this is

10    an ongoing investigation.  Generally, we do

11    not release any of this type of information,

12    whether it's an officer-involved incident or

13    not, nor do we release grand jury information.

14         As I said earlier, we generally speak

15    only through our grand jury, either as an

16    indictment or a no true bill.  And at

17    this time this could be harmful to the

18    investigation, until at least the

19    investigation is complete, and there has been

20    some determination one way or the other.

21         THE COURT:  What time frame are you

22    looking at insofar as completion of the

23    investigation, if you know?

24         MS. DODSON:  Judge, the only thing I can

25    tell the Court for sure is it won't be this

1    week.  It's a matter of all of the

2    investigators completing their reports,

3    putting the file together, and providing that

4    to the prosecutors, and then it will have to

5    go through whichever grand jury process it

6    goes through.  So I have no way to know

7    whether that would be a matter of weeks or

8    months, Your Honor.

9         THE COURT:  All right.  Thank you.

10        All right.  We'll proceed then with the

11   hearing on the motions to quash and the

12   subpoena duces tecum, and we'll start with

13   the Harrison County Sheriff's Department.

14   Mr. Faneca.

15        MR. FANECA:  May it please the Court and

16   counsel, Your Honor, the threshold issue in

17   the matter that is before the Court in this

18   hearing today is the question of jurisdiction

19   -- subject matter jurisdiction.  I do not

20   believe --

21        THE COURT:  If you could speak up just a

22   little bit.

23        MR. FANECA:  Sure.  Can we turn this a

24   little bit?

25        THE COURT:  That doesn't work.

1          MR. FANECA:  Then it doesn't matter which

2     direction we turn it.

3          THE COURT:  It's not -- It just feeds to

4     the court reporter's recorder.  That's all.

5          MR. FANECA:  Well, the threshold issue

6     that I see in this case -- the matter, I

7     should say, before the Court today is the

8     issue of subject matter jurisdiction with

9     regard to the subpoena duces tecum.  It is my

10    sincere belief that this Court does not have

11    subject matter jurisdiction to issue the

12    subpoena duces tecum that has, in fact, been

13    issued.

14         The case pending in this Court is the

15    estate of Mr. Jessie Williams, deceased.  Now,

16    the Court does not have a wrongful death

17    action pending.  It does not have a 1983 claim

18    for monetary damages pending.  What it does

19    have is the estate, and, at this point in

20    time, that is all that is pending before this

21    Court.

22         In Hunt versus Potter, the Mississippi

23    Supreme Court stated that jurisdiction granted

24    in 9-5-38 is limited to demands against the

25    estate and does not extend to demands of the

1    estate against living persons.

2    Another case addressing jurisdiction is

3    Lawrence County Schools versus Brister, in

4    which the Mississippi Supreme Court held that

5    chancery does not have subject matter

6    jurisdiction over a state tort claim act.

7    Now, it's important to recognize a

8    subpoena duces tecum is a form of discovery.

9    Rule 45, which states the administrative

10    process for the issuance of the subpoena duces

11    tecum, must be read within the context of Rule

12    26, which governs discoverable matters.  Rule

13    26 provides that a discovery request must be

14    relevant to the issues raised by the claims or

15    defenses of any party.  The comment to Rule 45

16    is clear that the material sought by a

17    subpoena must be relative to the controversies

18    before the Court.

19    Commenting on Rule 45, the United States

20    Supreme Court -- And I should pause here and

21    say our rules, as we all know, were patterned

22    and the modeled after the federal rules.

23    THE COURT:  And life hasn't been the same

24    since.

25    MR. FANECA:  Pardon?

1          THE COURT:  And the life hasn't been the

2     same since.

3          MR. FANECA:  Yeah.  The U.S. Supreme

4     Court stated Rule -- This issue came up in

5     District Court.  So it comes up to the U.S.

6     Supreme Court, and the U.S. Supreme Court

7     states, Rule 45 grants District Court power to

8     issue subpoenas as to witnesses and documents,

9     but the subpoena power cannot be more

10    extensive than the Court's jurisdiction.

11    Therefore, if the District Court does not have

12    subject matter jurisdiction over the

13    underlying action, and process was not issued

14    in aid of determining jurisdiction, process is

15    void.  Therefore, the fundamental defect with

16    the subpoena duces tecum is that it has been

17    issued in a court not having subject matter

18    jurisdiction.

19         Remember, we're talking about subject

20    matter jurisdiction over the potential

21    wrongful death claim, or perhaps even a

22    potential 1983 claim for monetary damages.

23    Therefore, we never reach the issue of whether

24    the information sought should be disclosed at

25    this time, is an exception to the records that

1  are subject to disclosure.  We never, ever

2  reach that issue.

3      If the Court has subject matter

4  jurisdiction, I have the burden of proving

5  reasons to quash the subpoena duces tecum, and

6  I am prepared to put on proof.  But I would

7  assert that if this Court does not have

8  subject matter jurisdiction, I do not have

9  that burden because subject matter

10  jurisdiction is something the Court either has

11  as a matter of law or does not have as a

12  matter of law.  It is not something that the

13  sheriff can bestow on the Court or waive and

14  submit to the Court.  It is governed by the

15  Constitution and the statutes which grant

16  authority to the courts.  And we all know that

17  the Constitution and the statutes grant

18  various jurisdictional authority to the

19  various courts within the state of

20  Mississippi.

21      The rule -- the time-honored rule with

22  regard to ascertaining what jurisdiction does

23  a court have, subject matter we're talking

24  about, what jurisdiction does a state agency

25  or a local agency have, is what has expressly

1    been granted by the Constitution and by the

2    statutes to that court or that agency.  It is

3    not what is prohibited in that Court or by the

4    statute of that agency.  So I think -- you

5    know, I don't think, I feel confident that the

6    primary threshold issue that really preempts

7    any other issue raised is the subject matter

8    jurisdiction.

9        Now, jurisdiction to administer the

10   estate, to manage the estate, to manage the

11   affairs of the minors, is within the context

12   of the estate proceeding.  It is not to ferret

13   out and to oversee wrongful death claims, 1983

14   claims.  I mean, simply, that's not the

15   function.  This Court has jurisdiction over a

16   great many matters, but it does not have

17   jurisdiction over that.  The proper forum for

18   this issue and for this subject matter is

19   going to be in the Circuit Court, or it's

20   going to be in the Federal District Court.

21       Now, counsel opposite would say, well,

22   the Court has jurisdiction over the business

23   of the minors, and in order for the minors to

24   determine what is -- you know, to see -- they

25   need to know what, if anything, they can file

1    and against whom.  But, again, that is not

2    what the Chancery Court's jurisdiction is.

3    The Chancery Court's jurisdiction is to

4    administer the estate, see that there's an

5    administrator, determine who the heirs are --

6    the wrongful death beneficiaries are,

7    authorize the administrator to file a wrongful

8    death action, to manage the monies, if any,

9    that are recovered in that wrongful death

10   action, to protect the interests of the minors

11   with regard to the monies to which come into

12   the estate as a result of the wrongful death

13   action, but not, not, to actually pursue the

14   wrongful death action or the 1983 action.

15        Now we just stop and think, the logic

16   there is the court who has the jurisdiction

17   for that discovery is the court in which the

18   suit is filed.  So whatsoever investigation

19   needs to be done to determine the appropriate

20   parties, whatever discovery needs to be done

21   is to be governed by the court having subject

22   matter jurisdiction.  It's perfectly logical;

23   otherwise, we have a court -- one court going

24   ahead and taking jurisdiction for the purposes

25   of discovery, even though it does not have

1    jurisdiction over the underlying matter.  And

2    at some point a wrongful death action or a

3    1983 action is filed in a different court, and

4    some of that discovery has already been done

5    prior to it ever getting to the court that

6    really has the jurisdiction to hear the merits

7    of that case.

8        Now, I mean, without getting too far

9    afield as to what our imagination could tell

10    us, we can have two different courts -- you

11    could have a court -- we could have a Chancery

12    Court saying you discover this, and we could

13    have Circuit Court or the United States

14    District Court saying, oh, no, this is not

15    discoverable.  It would lead to chaos.

16        So I am prepared, Your Honor, to go

17    forward with proof on the merits of whether or

18    not the information sought is discoverable or

19    not discoverable; but, I assert respectfully

20    to this Court that we are not in the proper

21    forum; and, that, therefore, if we are not in

22    the proper forum of the Court having

23    jurisdiction, there is no reason to proceed

24    because everything is void.

25        And as the Court knows, subject matter

1    jurisdiction may be raised at any time.  It

2    may be raised sua sponte by the Court.  It

3    must be proven by the plaintiff.  That being

4    the case, if I am correct that this Court does

5    not have subject matter jurisdiction,

6    everything else we do at this hearing is

7    basically an exercise in futility.  I would

8    respectfully suggest that Your Honor address

9    the issue of subject matter jurisdiction

10   before we get into the merits of whether or

11   not this discovery is appropriate under the

12   rules.

13        THE COURT:  All right, Mr. Bruni.

14        MR. BRUNI:  Your Honor, without repeating

15   unnecessarily argument by counsel, I would

16   like just like to point out to the Court that

17   there is a Mississippi Supreme Court decision,

18   Long versus McKinney.  And for the record,

19   it's 897 So.2d, beginning at page 160.  It's a

20   2004 case.

21        THE COURT:  I'm familiar with the case.

22        MR. BRUNI:  Yes, sir, Your Honor.  Well,

23   then you -- the Court is also aware, then, as

24   stated in the record -- in their published

25   decision, that the estate proceeding is

1    separate and apart from a wrongful death

2    claim.  And, also, as it sets out in there --

3        THE COURT:  Well, I don't question any of

4    that.  I accept the fact that this court does

5    not have jurisdiction to hear a wrongful death

6    lawsuit.  It does not have jurisdiction to

7    hear a 1983 action.  I will also tell you that

8    even if both parties came in here and wanted

9    me to hear it, there's a third person sitting

10   right here that would have to agree to that,

11   and I would not.

12       But the issue here is, in my view, the

13   estate's subpoena duces tecum.  And I'm not

14   meaning to cut you off.  I mean, I -- And

15   there is a vehicle under which this Court

16   could -- an ancient equitable remedy under

17   which this Court could act.  So the issue of

18   subject matter jurisdiction on the underlying

19   wrongful death claim, I don't have any issue

20   with anything Mr. Faneca has said or that you

21   have said in your pleadings.  And I'm not

22   trying to cut you off.  I spent a considerable

23   amount of time wading through the 25 pages of

24   the Long versus McKinney case and others.  So

25   I just want everybody to understand, I accept

1       the fact that this Court is not going to try

2       the underlying wrongful death claim, if, in

3       fact, one is ultimately filed.  It's just not

4       a -- that's not a chancery matter.

5            MR. BRUNI:  Thank you, Your Honor.

6            I guess, in addition, or to supplement

7       that, Your Honor, then I will state for the

8       record that the -- as Mr. Faneca brought out

9       to the Court, the whole purpose behind a

10      subpoena is for discovery.  And if there is a

11      subpoena in a Chancery Court estate

12      proceeding, then what is to be discovered for

13      administration of the estate -- management of

14      the estate?  There's been no determination of

15      the heirs or beneficiaries.  There's been no

16      determination that there's any minors in the

17      record.  And so, therefore, for counsel

18      opposite to make the argument that this is

19      needed for an investigation to determine

20      what's in the best interest of the minor,

21      well, Your Honor, there's nothing in the

22      record before the Court that there are any

23      such beneficiaries involved.  And so I think

24      it's a little premature and not ripe for the

25      Court at this point to make an adjudication

1    based on speculative argument of counsel.

2    The --

3        And taking that one step further, Your

4    Honor, with regard to the subpoena, if the

5    Court was to allow a subpoena to be issued and

6    to be served in any manner such as this -- And

7    as an officer of the court, I'm before you on

8    that -- is the Court then to make a finding

9    that there's some legitimacy to the action

10   based on the investigation pursuant to the

11   subpoena?  Because if that's true, then the

12   scenario presented to the Court by Mr. Faneca

13   would come true.  You would have one court

14   making a determination of legitimacy, whereas

15   the court in another action would be concerned

16   with that finding by this court.  Would that

17   be claims preclusion, issue preclusion?  How

18   would that enter into this?

19       And I think that's the burdening and

20   bothersome thing about this whole situation,

21   is that while counsel opposite makes the

22   argument that, well, the subpoena is needed so

23   I can make a determination under Rule 11 or

24   the Litigation Accountability Act if there's

25   any truthfulness behind allegations, well,

1   Your Honor, what do we do the other 95 percent

2   of the time, attorneys behind the bar?  Do we

3   have to go in front of the Chancery Court and

4   ask the Court to start issuing subpoenas

5   before any action is filed to determine

6   factual specificity behind allegations that

7   appear in the initial pleadings?  No,

8   certainly not.

9        And so I think it's a little

10  disingenuous, Your Honor, for someone to try

11  to argue that the subpoena power is necessary

12  to legitimize a fishing expedition on

13  pleadings on another separate action that's

14  not even been filed, Your Honor.  It's using

15  the Court as nothing more than a backdoor

16  attempt for potential publicity, for some

17  other avenue.  It's not --

18        I guess the bottom line is, Judge, if

19  we're going to allow a subpoena to be issued

20  and served in Chancery Court on the

21  administration of an estate proceeding, then

22  what's the purpose?  Is the purpose then for

23  determination of administration of the estate?

24  The estate is only concerned, as Mr. Faneca

25  pointed out with the case, with claims against

1        the estate.   There's been no claims asserted

2        in the record against the estate at this point

3        that we're aware of, Your Honor.   And so if,

4        then, the matter is concerning a claim for the

5        estate, well, then as counsel brought out, Mr.

6        Faneca, with the case, that is not proper

7        jurisdiction of the Court at this point.   And

8        so then if the whole purpose behind the

9        subpoena is concern for the minors, well, Your

10       Honor, there's nothing in the record about any

11       minor at this point.   It's not ripe.   It's

12       premature.   So -- and if the Court is

13       concerned about the legitimacy of the minors

14       as well, Your Honor, well, the estate

15       proceeding does not bleed over into the

16       proceedings of a minor.   There's no

17       guardianship, as far as we're aware, open

18       either.

19            So I feel that right now, as Mr. Faneca

20       has stated, the issue before the Court is

21       subject matter jurisdiction.   It's the opinion

22       of an officer of the court and of myself, as

23       well, that the Court has no subject matter

24       jurisdiction of this.   Thank you.

25            THE COURT:   Mr. Crosby or Mr. Whitfield.

1    MR. WHITFIELD:  May it please the Court.

2    THE COURT:  Yes, sir.

3    MR. WHITFIELD:  Your Honor, it is a

4    privilege to come before this Court and to

5    represent the estate of Jessie Lee Williams,

6    Jr.  My name is John Whitfield.  And on behalf

7    of myself and Mr. Michael Crosby, we stand

8    before the Court to respond to the objections

9    to the subpoena that was issued by this Court.

10    Having had the privilege to likewise come

11    before this Court on several occasions, I am

12    aware that the Court has read all of the

13    pleadings relative to this matter, as well as

14    the caselaw.  And I will not belabor the Court

15    by going over those items that are stated in

16    our pleading; however, I will highlight a few

17    items, Your Honor.

18    The issue that Mr. Faneca raises, first

19    and foremost, Your Honor, is one that he

20    couches under the terms of subject matter

21    jurisdiction.  He asks the Court whether it

22    actually has subject matter jurisdiction to

23    cover the subpoena that has been issued, and

24    he cites a few cases in his pleadings, which

25    the Court has already pointed out have nothing

1          to do with the issuance of a subpoena as it

2          relates to subject matter jurisdiction.

3               What those cases address, as Mr. Faneca

4          acknowledged, is just simply where a plaintiff

5          may properly file a claim that falls under the

6          Mississippi Tort Claims Act.  That's what

7          those cases address.

8               We stand here before the Court, and we

9          agree with the vast majority of everything

10         that Mr. Faneca has said.  If this was action

11         having been filed in this Court against the

12         sheriff, the City of Gulfport or any other

13         state agency or a derivative thereof, under

14         the Mississippi Tort Claims Act, this Court

15         would not have jurisdiction.

16              Your Honor, Section 9-5-83 of the

17         Mississippi Code, as well as Article 6,

18         Section 159, answers that question of subject

19         matter jurisdiction.  This is a court of

20         equity.  This is a court that is charged with

21         overseeing and hearing matters involving the

22         administration of an estate and/or overseeing

23         the affairs of minors.

24              Now, Mr. Bruni raises a question by

25         stating there has not been a determination of

1    heirs.   There has not been a guardianship

2    opened.   The purpose of opening the estate, as

3    it was done on February the 14th of this year,

4    was to begin the process to make determination

5    of whether there are sufficient assets.   Part

6    of the oath that Mr. Williams took before this

7    Court in the opening of this estate was that

8    he would, to the best of his ability,

9    administer the assets, the chattels, the

10   goods, and the credit of the estate of his

11   brother.   Mr. Williams has already done a

12   great deal to further that process.

13        Your Honor, Mr. Crosby and I had an

14   obligation, as the Court is aware, under Rule

15   3.1 of the Mississippi Rules of Professional

16   Responsibility, under the Mississippi

17   Litigation Accountability Act of 1988, as well

18   as under Rule 11 of the Rules of Civil

19   Procedure, to thoroughly investigate any

20   potential action.

21        As stated in the pleadings opening the

22   estate on February the 14th, Mr. Williams

23   sought assistance to make a determination

24   whether a wrongful death action should

25   proceed.   Your Honor, if we stood before this

1    Court, or any Court, and we simply filed an

2    action based upon speculation, without

3    investigating, we would be held accountable.

4        Mr. Crosby and I seek the assistance of

5    this Court to not further or not to even file

6    or to get into the merits of a wrongful death

7    suit, but to see if a wrongful death action

8    should proceed, and, if so, against whom.  The

9    last thing we want to do, Your Honor, is bring

10   an action -- file an action against

11   individuals who had nothing to do with the

12   matter involving the death of Jessie Williams,

13   Jr.

14       Your Honor, Mr. Faneca made a very

15   interesting statement.  As he was talking

16   about the Court's subject matter jurisdiction,

17   and I wrote this down as best I could

18   verbatim, one of the items he mentioned, he

19   said, the Court is authorized -- has the

20   ability to authorize the administrator to file

21   a wrongful death action.  When he was going

22   through his litany of items that the Court has

23   proper jurisdiction regarding, this was one of

24   the items that he mentioned; that the Court

25   has the ability to authorize the administrator

1        to file a wrongful death action.  If the Court

2        has the ability to authorize the filing of a

3        wrongful death action, the Court likewise has

4        the ability to allow the administrator of the

5        estate to utilize whatever is legally at his

6        disposal to investigate that matter to make a

7        determination whether an action should be

8        filed.

9            There are seven minors who ultimately,

10       when the time is right, the Court will hear

11       evidence that they are truly the intestate

12       beneficiaries of Jessie Lee Williams, Jr.

13       That time has not come.  There's no need for a

14       guardianship, which is really just a red

15       herring at this point, because there have been

16       no assets identified in the estate that inure

17       to those individuals.

18           THE COURT:  Are there any adult heirs at

19       law -- These seven minors are heirs at law of

20       Mr. Williams?

21           MR. WHITFIELD:  That's correct, Your

22       Honor.

23           THE COURT:  Are there any adult heirs at

24       law of Mr. Williams?

25           MR. WHITFIELD:  Not that we've

1          identified, Your Honor.

2                 THE COURT:  All right.

3                 MR. WHITFIELD:  Your Honor, we're not

4          here to determine whether this Court has

5          subject matter jurisdiction over a tort claims

6          action.  This is not a tort claims act.  The

7          matter that's before this Court is merely the

8          administration of an estate authorizing Mr.

9          Williams the opportunity to fully investigate

10         this matter.

11                The Court began by asking Ms. Dodson what

12         was the district attorney's position, and I

13         believe Ms. Dodson stated that the DA was

14         concerned about the release of these tapes

15         because it may harm the investigation.  I

16         believe that -- those were her exact words.

17         Your Honor, before the Court accepts that as

18         being the absolute truth, we would urge the

19         Court, even if it's in camera, to engage in a

20         dialogue with Ms. Dodson to find out how the

21         investigation may be harmed if a copy of this

22         tape is produced to counsel, to the Court, or

23         to whomever the Court may decide.

24                One primary concern, Your Honor -- And

25         this is no reflection upon the sheriff, the

1       City of Gulfport, or anyone.  Within the past

2       12 months, or just slightly beyond that, we

3       have had a tsunami that hit one part of the

4       world that totally wiped out entire

5       communities.  We have experienced Hurricane

6       Katrina, which has left many businesses,

7       governments, individuals, without any shred of

8       evidence of past dealings.  Your Honor, we

9       firmly believe that the more quality copies

10      that are in safekeeping, the better it is for

11      not only the administration of the estate, but

12      also to further that investigation.

13          We have stated in our pleadings, and we

14      have requested of the Court, that Your Honor

15      consider, first and foremost, denying the

16      motion to quash and allowing the subpoena to

17      stand requiring that the City of Gulfport and

18      the sheriff produce these items forthwith.  If

19      Your Honor feels that it may in some way

20      affect the investigation, then counsel would,

21      in fact, ask the Court to consider obtaining a

22      copy of the tape itself and allowing counsel

23      in chambers to review the tape, so that we can

24      make a determination.

25          Your Honor, just like Mr. Bruni, we are

1  bound by the rules of professional conduct.

2  We are bound, as officers of this court, to

3  act in a certain way and to ensure that

4  certain things take place.  If the Court wants

5  to go ahead and to order the production of the

6  videotape under a protective order, that is

7  another way of safeguarding both the interests

8  that Ms. Dodson raises, as well as those

9  raised by counsel opposite.

10      I don't believe that Mr. Faneca would

11  stand before the Court, and I don't believe

12  Ms. Dodson would stand before the Court and

13  tell the Court that Mr. Williams will never be

14  entitled to this access to the tape.  I

15  believe we all agree, and we all know that

16  truly at some point the sheriff will have to

17  turn over these tapes, and so will the City of

18  Gulfport.  We would prefer, Your Honor, that

19  that occur sooner rather than later.  There's

20  an old adage that says justice delayed is

21  justice denied.

22      Your Honor, part of what's happening

23  here, and part of what Mr. Crosby and I would

24  like to control, is that there's a lot of

25  speculation.  The tape is going to show what

1        it's going to show.  There may be audio.

2        There may not be audio.  The video may be

3        grainy.  We don't know.  We haven't seen it,

4        Your Honor.  We would implore the Court to

5        allow the subpoena to stand.

6        The motions to quash, they may have some

7        merit.  And, actually when you think about it,

8        Your Honor, I don't believe there's a great

9        deal of disagreement as to the production of

10       these tapes, other than the timing.  If the

11       Court or counsel opposite has concerns about

12       the tape being released to the media -- I

13       believe someone said that, but I don't recall

14       exactly who.  But if there is some concern

15       about media access to the tapes before the

16       grand jury returns, the Court can deal with

17       that as it has in the past on other matters.

18       The cases Mr. Faneca cites -- Strike

19       that, Your Honor.  There's one statute that he

20       noted in his brief, and the statute basically

21       says that in matters involving investigations,

22       that they are not subject to be produced.  But

23       there's an exception to that, first and

24       foremost, that fall under the Tort Claims Act,

25       which we said doesn't even apply to this

1    proceeding.  But assuming it does, there is

2    always an exception when the best interests of

3    the general public is at stake.

4        There are a lot of issues that must be

5    ferreted out before there is even a serious

6    consideration of filing under the Tort Claims

7    Act or the 1983 Act.  The federal courts

8    require, as this Court is aware, something

9    more than just notice pleadings on 1983

10    actions.  And as a consequence, it is

11    incumbent upon Mr. Crosby, it is incumbent

12    upon myself, it is incumbent upon Mr. Williams

13    under the oath that he has signed that is in

14    the pleadings in this court, that he will

15    fully and fairly investigate any potential

16    matters involving chattels, goods, credits

17    and, most important, assets, Your Honor, of

18    the estate of his deceased brother.  We would

19    assert that any potential evidence that is out

20    there, Your Honor is indeed an asset of the

21    estate; likewise, coming within the purview of

22    this Court, for which this Court has

23    jurisdiction, which the Court can direct the

24    safekeeping, can direct the production, can

25    direct the release, the method, the manner.

1          And with that, we would ask the Court,

2     with all due respect to counsel opposite, with

3     respect to the District Attorney's office, to

4     allow Mr. Crosby and myself to have access to

5     this tape, Your Honor.  And I'm saying tape.

6     It may be tapes, plural.  We don't know.  I

7     know, in conversations with Mr. Faneca and Mr.

8     Bruni, they have told me that they have

9     safeguarded the tapes; but, to that extent,

10    Your Honor, we believe we're entitled to it.

11    We believe that if there is some concerns that

12    the Court may have with counsel opposite, they

13    can be rectified.  We believe there are other

14    mechanisms within the rules of civil procedure

15    that afford those protections.

16         And as I go to my seat, talking about

17    those rules of civil procedure, which we

18    adopted, I believe, in 1980 or '82, Your

19    Honor, Rule 1 is a very important rule.  And I

20    always -- when I have an opportunity to

21    address an issue concerning the rules, I

22    always just go back to that basic rule, what

23    is the scope of the rules?  The rules of civil

24    procedure, which apply to this Court, are to

25    ensure the just, expeditious, and inexpensive

1          gathering of evidence and the resolution of

2          cases.  Is the sheriff and the City of

3          Gulfport saying that on behalf of the estate

4          Mr. Williams, we must now go out and begin to

5          waste potential assets in order to have access

6          to what the very basic premise of the rules

7          was meant to achieve, that is, reducing costs,

8          reducing time, reducing the burden upon

9          parties who come before this Court?  This

10         Court has the authority.  We do not envy the

11         Court.  It's a very difficult position, but we

12         believe the decision is rather simplistic.

13         Rule 45 is part and parcel of the rules of

14         civil procedure.  Mr. Williams, as

15         administrator --

16              THE COURT:  I have a difficult decision

17         to make, but it's simplistic?

18              MR. WHITFIELD:  It's a difficult decision

19         to make, Your Honor, but it's very simple in

20         its ultimate resolution.

21              The rules are what the rule are.  The

22         rules provide safeguards for every concern

23         that has been raised.  And if we are to

24         further the tenets of the rules of civil

25         procedure, Your Honor, that is, making

1    litigation, first and foremost, something

2    that's inexpensive, something that's not

3    burdensome, something that tries to reach an

4    ultimate resolution and the truth, then we

5    should go forward and allow the rules to speak

6    for themselves.

7         If the Court has any questions, I would

8    be glad to entertain them at this time, Your

9    Honor.

10         THE COURT:  I don't have any questions.

11         MR. WHITFIELD:  Thank you, Your Honor.

12         THE COURT:  Any rebuttal, Mr. Faneca?

13         MR. FANECA:  Yes, sir.

14         May it please the Court, most of the

15    argument raised by my esteemed colleague would

16    be appropriate if this were a discovery issue

17    being argued and the Court having subject

18    matter jurisdiction were the case.  It would

19    be appropriate if we were in the Circuit Court

20    in a wrongful death action.  It would be

21    appropriate if we were in the United States

22    District Court in a 1983 action.

23         The jurisdiction to issue a subpoena

24    duces tecum, which is tantamount to discovery

25    -- stated differently, the jurisdiction to

1      conduct discovery in a matter cannot exceed

2      the jurisdiction that the Court has over the

3      matter.  And that is the relatively simple

4      issue before the Court.  Here, we have a

5      subpoena duces tecum that was issued seeking

6      information that perhaps is relevant to a

7      wrongful death action or a 1983 action,

8      perhaps would even lead to the discovery of

9      information that would be relevant to such

10     actions, but it has nothing to do with the

11     management of this estate.

12         Now, the Court's jurisdiction with regard

13     to the management of the estate, particularly

14     when we get into the matter of a wrongful

15     death action or a 1983 action, is to determine

16     who is -- in order to protect the estate, in

17     order to protect the wrongful death

18     beneficiaries, determine who is the

19     appropriate person to bring that.  All of the

20     parties who have an interest -- who may have

21     an interest in such an action as plaintiffs

22     may be entitled, may be heirs, wrongful death

23     beneficiaries, are they in the action?  Is the

24     money, if there is a recovery, going to be

25     distributed equitably and fairly within the

1    estate and to the wrongful death

2    beneficiaries?  It is not to determine who the

3    wrongful death beneficiaries are to sue.  It

4    simply is not.  That is not the function of

5    the administration of the estate.  This is not

6    to investigate who the wrongful death

7    beneficiaries may sue.

8        The Supreme Court has been clear on that

9    issue because the underlying premise is that

10   the subpoena has to be related to the

11   jurisdiction of the court to the underlying

12   controversy in the court.  This subpoena is

13   not related to the underlying controversy in

14   the court.

15       Now, counsel would argue that, well,

16   there are minors involved.  And, of course, we

17   all know in Chancery Court when we say minors,

18   oh, we have to look after the interest of the

19   minors, and the Court does.  The Court does.

20   But it is not to determine who should be sued,

21   if anybody, and to conduct an investigation

22   and to conduct discovery to determine not only

23   who should be sued, but what the possible

24   causes of action are, etc.  That is not the

25   function of this Court.

1          Now, think about this.  If it were, then
2     we would see this coming before the Court in
3     many, many tort actions.  I mean, what would
4     be the difference, for example, if Mr.
5     Williams were unconscious in a coma, rather
6     than deceased?  The same argument would apply.
7     To make the point, he could not identify who
8     he alleges caused him a wrong.  He would like
9     for the Court to help him to make that
10    identification and to conduct that
11    investigation, and that is simply not within
12    the jurisdiction of the Chancery Court to
13    conduct such an investigation.
14         You know, it -- I could go on and on, but
15    I think -- you know, I think I am articulating
16    the point; that, if we follow the logic -- or
17    the illogic, with all respect to my esteemed
18    counsel, then we could be doing this in every
19    tort case.  And then they might say, well, no,
20    because every tort case isn't going to include
21    a minor.  Well, a lot of them are.  Well, what
22    if it includes a guardian?  You know, it's not
23    necessarily a minor, but it's a guardian ad
24    litem?  Then we would be doing this same
25    thing.

1          The courts are not set up that way.  The

2     courts are set up with jurisdictions to

3     various courts, Chancery, Circuit, you know,

4     and we go on and on.  We know that.  You can't

5     issue a subpoena duces tecum to produce

6     various records in a divorce case because one

7     of the parties might have some kind of a

8     lawsuit against somebody else.  That's

9     extraneous to the divorce case.

10         As much as anything, it is a common sense

11    matter of understanding -- you know, analyzing

12    and understanding the basis for the

13    jurisdiction, and that the discovery, if you

14    will, which is all a subpoena is, has to be

15    relevant to the underlying controversy and has

16    to be with regard to a matter that the Court

17    has subject matter jurisdiction over.

18         Now, counsel has suggested that they have

19    a duty under Rule 11 and litigation

20    accountability to investigate.  Well, no one

21    argues with that.  I would not dispute that.

22    That's true in every lawsuit that is filed.

23    But that duty, nowhere does it say -- nowhere

24    is there a statute that says, and that duty

25    may be pursued in the Chancery Court to file

1       an action perhaps against or to issue

2       subpoenas to conduct an investigation, to go

3       out and -- have the Chancery Court issue

4       subpoenas to go out and determine whether or

5       not there's a reasonable basis to name certain

6       people as parties.  The investigation is

7       conducted before the suit is ever filed, and

8       it's a reasonable investigation.

9           They have complied with the reasonable

10      investigation.  I mean, it's -- they have

11      everything they need at this point to file a

12      suit.  I mean, there's no question about that.

13      That's a slam dunk.  They have satisfied the

14      requirements of Rule 7, so that's not the

15      purpose.  But, I mean, you know, I didn't

16      really want to get here -- I didn't want to

17      get to this particular issue, but that is the

18      red herring.  It's not about any requirement

19      that, as an officer of the court, this

20      investigation hasn't been made.  Let's face

21      it.  Everybody knows that Mr. Williams was in

22      the custody of the Harrison County jail.  Just

23      the comments of counsel in the newspaper, on

24      the radio, on his website, I mean, they have

25      done a very good job, I would say, of

1          conducting an investigation.

2                Now, what normally happens is a suit is

3          filed, and if one is searching for certain

4          names to have the proper parties, discovery is

5          conducted in the suit in which -- in the court

6          in which the suit is filed.  And those names

7          are brought in -- you know, I mean, I see this

8          day after -- you know, every day.  I've been

9          doing this, as the Court knows, for longer

10         than I can remember, but it's -- that's the

11         way it's done.  So this has nothing to do with

12         needing to conduct an investigation.  But it

13         does have to do with the jurisdiction of the

14         Court.  And I just -- it is so clear to me,

15         Your Honor, and it is so clear in the Supreme

16         Court cases that the subpoenas have to be

17         relevant to the underlying action.

18                And, you know, minors, minors is a red

19         herring in this issue.

20                Now, I don't know that I can elaborate

21         much more on that, Your Honor; but, as I said,

22         if the Court -- It's not about bringing up

23         sooner rather than later.  It's not the

24         efficient administration of justice.  Sure,

25         that's the purpose of all the rules, but we

1    have to look at the specific rules to

2    determine what is proper within each rule,

3    what is proper within Rule 26, what is proper

4    within Rule 45.  There is the overall purpose.

5    This is what these rules are all about.

6    And contrary to what counsel opposite is

7    asserting, I would suggest that the effort to

8    do this subpoena duces tecum is contrary,

9    totally contrary, to the purpose of the rules,

10   which is to provide for an orderly

11   administration of justice, to provide rules,

12   to provide procedures, to provide a remedy for

13   every wrong, but in the appropriate court; not

14   to go running around nilly-willy saying --

15   willy-nilly saying, oh, if you give me this,

16   and if you give me that, I'm going to be able

17   to get through this thing faster.

18   We have a time-tested procedure in

19   Anglo-Saxon law and common law.  We have a

20   time-tested procedure with rules, with various

21   courts of jurisdiction, various jurisdictions,

22   and it has worked.  It has worked for hundreds

23   of years.  And I would suggest this is an

24   effort -- I'm not saying so much that it's

25   intentional, but I am saying that the result

1    of this is contrary to the procedures that we

2    have followed in our society for many, many

3    years.

4         And I'm also suggesting that for every

5    wrong, there is a remedy under our law.  And

6    it is up to the attorneys, and it is up to the

7    attorneys whether they be advocates and

8    whether they be judges to preserve the

9    integrity of our jurisdictional system, and

10    not to deviate from the procedure, not to

11    deviate from the rules, in order to maintain

12    the confidence in our system and in order to

13    prevent our system from simply being an ad

14    hoc, make it up as we go, whatever appears to

15    be expedient, wherever there appears to be

16    some justice.  If we follow the law, if we

17    follow the procedure, the likely result at the

18    end of the day is going to be justice.  And I

19    would implore the Court not to deviate from

20    that course of action.  Thank you, Your Honor.

21         THE COURT:  Mr. Bruni, do you have

22    anything, sir?

23         MR. BRUNI:  Just briefly, Your Honor.

24         As Mr. Faneca has borne out, again,

25    there's to be a reasonable relationship

1        between what the -- the items the subpoena

2        seeks and the issues before the Court.  Along

3        these lines, Your Honor, to what -- the case

4        that I spoke to earlier -- And for the record,

5        the case that sets that out, we set out on

6        page 3 of our motion, the <u>Mississippi Ethics</u>

7        <u>Commission</u> case.  So counsel for the estate

8        has said that the items that they're seeking

9        by subpoena are necessary to investigate the

10       viability or the legitimacy of a claim for

11       damages.  Well, if that's true, again, they

12       have to go back to that recent case of <u>Long</u>

13       <u>versus McKinney</u>, where the Supreme Court

14       emphatically said they were addressing all of

15       the misconceptions and misperceptions and

16       understandings dealing with wrongful death

17       claims and how they bleed into and affect

18       estate proceedings.

19            And as the Supreme Court pointed out,

20       there is absolutely no law or court authority

21       or permission needed for pursuing a wrongful-

22       death claim, and that this is not the function

23       for the administration of an estate.  I mean,

24       Your Honor, that's succinct.  You can't change

25       that.  That's the law.  And if that's the law,

1    I'm having a hard time in my mind wondering

2    why we're arguing all of this so long  because

3    --

4        THE COURT:  Well, they also say in that

5    case that while Chancery Court approval is not

6    required, that it's probably advisable to go

7    through Chancery Court for the purposes that

8    they very explicitly state in the Long

9    opinion.  And I've cut you off.  I'm sorry.

10       MR. BRUNI:  No, that's okay.  Well, Your

11   Honor, I'm glad you brought that up.  In the

12   decision, Your Honor, the Court states that

13   the reason why we do that is for appointment

14   of a representative of the estate if the

15   estate wishes to join in a wrongful death

16   claim.  The second would be approval of the

17   contract for the attorney representing the

18   estate, and then it discusses the potential

19   conflicts of interest with regard therein.

20   And the third thing is to make sure that the

21   recoupment of any monies is properly dealt

22   with in the administration of the estate.

23   It's not that the estate needs permission or

24   authority from the Chancery Court to pursue an

25   action for damages on behalf of the estate.

1        You don't need the authority, but you do need

2        the representative.

3             Now, if there was -- for instance, the

4        wrongful death statute still states there's

5        only one action, and in that one action,

6        there's a person or -- representing the other

7        wrongful death beneficiaries, as well the

8        estate.  There's no requirement, as the

9        Supreme Court says in that <u>Long</u> case, that the

10       estate has to get permission before it goes

11       and joins in that wrongful death action.

12            So -- But, again, we're missing the issue

13       here.  The issue is the subpoena.  Is there a

14       reasonable, rational relationship between the

15       items sought and the issues before the Court?

16       Well, again, the Supreme Court says the issue

17       before this Court is not whether the estate

18       has the authority to file a wrongful death

19       action; and so, therefore, the argument of

20       counsel opposite is flawed in that there is no

21       issue before the Court in any way having any

22       relationship with the items sought by the

23       estate.

24            Substantively, counsel -- Mr. Whitfield

25       has brought up before the Court an AG's

1    opinion that talks about disclosure of the

2    items.  Now, I know Mr. Faneca had not delved

3    into the substantive argument, if you will,

4    about disclosure.  And just briefly to touch

5    on that, Your Honor, the Court is aware by the

6    motions before the Court on the various

7    statutes that explicitly hold on nondisclosure

8    of documents and records and specifically the

9    items requested.

10    Now, the only argument made by counsel is

11    that there's an AG's opinion that says that if

12    it's in the public benefit, even though the

13    statute holds that items should not disclosed,

14    they can be disclosed.  Well, that's not what

15    the AG's opinion says, with all due respect.

16    The AG's opinion merely goes off in -- of

17    course, an AG's opinion -- an Attorney

18    General's opinion, for the record, Your Honor,

19    is merely advisory anyway.  And it states that

20    the statutes hold that these items should not

21    be disclosed, and so it reiterates what's held

22    in the statute.

23    But we have to remember, the statutes are

24    a legislative pronouncement of the balancing

25    of interests here.  And I'm hearing argument

1    on both sides about the interests involved and

2    whether there should be disclosure or not.

3    These balancing -- this balancing, if you

4    will, has already been held by the legislature

5    in the statute.  It's not for the Court to

6    make here.  It's not for argument by the

7    counsel, either.  And so the statutes are

8    explicit in the fact that these items are

9    nondisclosable.

10       It's also borne out in the

11   representation, or the argument, if you will,

12   from the representative of the District

13   Attorney's office here this morning, as well,

14   about the grand jury proceeding.

15       Without belaboring the Court any more,

16   and I know the Court has other docket matters

17   to attend to, the bottom line is there's no

18   jurisdiction, not for the wrongful death

19   proceeding, Your Honor, but for the issuance

20   of the subpoena as a tool or an instrument of

21   discovery.  That's the jurisdictional issue

22   before the Court.  And the second thing is

23   that state law precludes, as well as common

24   law, the disclosure of the items sought.

25       THE COURT:  All right.  The Court agrees

1    with Mr. Whitfield to a point, that it's faced

2    with a difficult decision.  Much has been

3    argued here today about subject matter

4    jurisdiction.  And clearly, the Court does not

5    have subject matter jurisdiction over wrongful

6    death claims, and it does not have subject

7    matter jurisdiction over 1983 claims.

8        The issue before the Court is the

9    subpoena duces tecum -- the two subpoenas

10   duces tecum, one served on the sheriff and one

11   on the City of Gulfport for videos and other

12   items which the plaintiff here, Mr. Williams

13   -- Mr. Terry Williams, wishes to use as

14   evidence in a potential wrongful death claim

15   or a 1983 action.  I think that's a given.

16       While the Court does not have subject

17   matter jurisdiction of the wrongful death and

18   a 1983 action, the Court would have

19   jurisdiction on a complaint -- a separate

20   complaint for discovery, which is an ancient

21   remedy in equity.  But the filing of the

22   subpoena duces tecum itself does not invoke

23   that jurisdiction.  There are certain elements

24   that must be alleged and proven to succeed on

25   a separate complaint for discovery.

1          The fact that the Court would entertain a

2     complaint for discovery and may or may not

3     grant the relief does not mean that it would

4     ultimately hear the wrongful death action or

5     the 1983 action.  It would not.

6          The Court will grant the motions to quash

7     the subpoenas because of that reason.  That

8     does not preclude the subsequent filing of a

9     separate complaint for discovery by any means.

10     But, at least on the procedural track that

11     this matter is presented to the Court, I

12     cannot grant the relief in the fashion in

13     which it's brought to me.  Now, that's not to

14     say that I would ultimately give relief on a

15     complaint for discovery, because there's

16     separate elements that I'm charged with

17     finding in that -- in the event a complaint

18     for discovery was filed.

19          I also must say that as a Chancery

20     Court, a court of the State of Mississippi,

21     a constitutionally-created court, I must

22     also, under these particular facts, give a

23     significant amount of weight to the interest

24     of the State of Mississippi, not the sheriff

25     of Harrison County or the City of Gulfport,

1    but the State of Mississippi in its capacity

2    to present cases to the grand jury and to

3    prosecute indictments if true bills are

4    returned.  I must also give that same

5    consideration to the United States of America,

6    in the event the U.S. Attorney presents a

7    matter to a federal grand jury and indictments

8    are returned.

9        I will do nothing that would even come

10    remotely close to prejudicing the rights of

11    the State of Mississippi or the United States

12    America to pursue a criminal action in any

13    case.  That's their bailiwick to make that

14    decision.

15        The other part of -- or basis of my

16    decision is that these events occurred in

17    early February, and we're now in early March.

18    I believe, and, Mr. Crosby, you correct me

19    and, Mr. Whitfield, if I'm wrong, that we're

20    dealing with essentially a one-year statute of

21    limitations on certain elements that you would

22    bring.

23        MR. CROSBY:  Yes, sir.

24        THE COURT:  I find that the overriding

25    interest of the State of Mississippi and the

1 United States of America, should they wish to
2 bring an indictment, at least at the moment,
3 overrides the private interest of the heirs of
4 Mr. Williams, insofar as the information they
5 request.

6 Having said all of that, and the fact
7 that I -- it's not been argued to me or shown
8 to me that there would be great prejudice in
9 delaying this matter until -- for a reasonable
10 period of time, so that matters could be
11 presented to the grand jury; but, at least in
12 the context in which this matter is presented
13 to the Court, that is, subpoena duces tecum in
14 a wrongful death action, which is a separate
15 statutory creature -- It's not -- a wrongful
16 death claim is not an asset in a decedent's
17 estate like his home or his property or a bank
18 account might be.  That claim is not subject
19 to the claim of creditors, except for funeral
20 expenses and attorney's fees.

21 But the Court would, if properly
22 presented -- if it were properly presented to
23 the Court, have the authority to consider a
24 separate complaint for discovery brought by
25 one of the wrongful death beneficiaries.

1          So, for that -- those reasons, I'll ask

2     Mr. Faneca and Mr. Bruni if you will prepare

3     an order consistent with my bench opinion.  I

4     make it clear, this is without prejudice to

5     the rights of Mr. Williams to initiate any

6     other action in this Court which would be

7     proper in a chancery proceeding.

8          I will also say that the matters

9     regarding the evidence sought, their

10    safekeeping and spoilation, if that should

11    occur, are best considered by the trial court

12    judge in Circuit Court or the United States

13    District Court.

14         But the Court will not impose sanctions

15    as requested by the sheriff's office.  If the

16    request had been made through a complaint of

17    discovery, clearly, it would have been a

18    proper pleading in this Court.  That doesn't

19    mean the Court would have granted it or will

20    grant it if one is filed.  But the Court does

21    not view the request as a sanctionable event.

22         There being nothing further, the Court

23    will be in recess for a few minutes.

24  (OFF THE RECORD.)

25         THE COURT:  I would ask -- it was stated

JUDI MORROW SCHULTZ, CSR, OFFICIAL COURT REPORTER
504 FAIRWAY DRIVE, PASS CHRISTIAN, MS. (228)865-4011

1       by Mr. Whitfield that the wrongful death

2       beneficiaries are seven minor children.  I

3       would ask that you read carefully the Long

4       versus McKinney case, in which it says that

5       any agreement for the payment of attorney's

6       fees from a minor's share of proceeds must be

7       approved by a chancellor.  What's been

8       approved so far does not encompass the minors'

9       interests.  So if there were a recovery, your

10      contract would only recover -- cover the

11      funeral expenses.  I'm sure you don't want

12      that.

13          MR. WHITFIELD:  Your Honor, we've

14      actually made that request.

15          THE COURT:  All right.  Thank you.

16          And, also, Mr. Whitfield, there's not a

17      copy of your contract attached to your

18      petition as stated.  I would like for you to

19      furnish one to the clerk's office, with your

20      certificate that that's the contract you

21      provided to Judge Bise when he opened the

22      estate for you.

23          MR. WHITFIELD:  Very well, Your Honor.

24          THE COURT:  Thank you.

25      (THE HEARING WAS CONCLUDED.)

## CERTIFICATE OF COURT REPORTER

STATE OF MISSISSIPPI

COUNTY OF HARRISON

    I, Judi Morrow Schultz, CSR No. 1254, Official Court Reporter of the Eighth Chancery Court District of the State of Mississippi, certify that the above and foregoing fifty-four (54) pages contain a true and correct transcript of the matter taken by me in the hearing before HONORABLE JIM PERSONS, Chancellor of the Eighth Chancery Court District of Mississippi, on March 2, 2006.

    WITNESS MY SIGNATURE, this the 15th day of March, 2006.


Judi Morrow Schultz, CSR, 1254
504 Fairway Drive
Pass Christian, Mississippi  39571

228-865-4011    228-452-2384

