# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

ESTATE OF JESSIE LEE  :
WILLIAMS, JR.     :
        :
   PLAINTIFF,   :  **Civil Action No.: 1:06cv-196LG-JMR**
        :
v.         :
        :
HARRISON COUNTY   :
MISSISSIPPI, ET AL.   :
        :
   DEFENDANTS.  :

## AFFIDAVIT OF JAMES A. GONDLES, JR.

COMMONWEALTH OF VIRGINIA  )
            ) ss:
CITY OF ALEXANDRIA     )

  JAMES A. GONDLES, JR., being of legal age and being first duly sworn, deposes and states as follows:

  1.  I have personal knowledge of each of the facts hereinafter set forth and make this affidavit in support of the Motion to Dismiss of Defendant American Correctional Association.

  2.  I am, and at all times relevant hereto have been, Executive Director of the American Correctional Association ("ACA"). As ACA's Executive Director, I am ultimately responsible for management of the day-to-day operation of ACA and all of its programs, including the correctional facility accreditation program operated by the Commission on Accreditation for Corrections, a division of ACA.



3.      ACA is a private, not-for-profit corporation organized under the laws of the State of New York.  ACA's approximately 20,000 members include corrections officials and officers, sheriffs, probation and parole officers, members of the judiciary, ex-offenders and others interested in improvement of correctional systems in the United States and abroad.

4.      ACA's offices are located in Alexandria, Virginia.  ACA is an educational organization exempt from federal income taxation under section 501(c)(3) of the Internal Revenue Code.

5.      Through its Commission on Accreditation for Corrections division, ACA maintains a private, non-governmental, voluntary accreditation program pursuant to which federal, state and local correctional facilities may apply for ACA accreditation.  Accreditation is based upon an applicant correctional facility's demonstration of compliance with correctional facility standards adopted by ACA.  Accreditation is valid for three years.

6.      Because ACA's accreditation program is entirely voluntary, ACA has no authority to require a correctional facility to seek accreditation, to adopt any procedures or to change any existing procedures.  Rather, ACA's sole authority is to deny accreditation or reaccreditation to, or to withdraw accreditation from, any facility found not to be in compliance with applicable ACA standards.

7.      No governmental or quasi-governmental organization either requires that ACA operate its accreditation program or regulates such accreditation program.

8.      ACA's accreditation program is funded completely by the fees paid to ACA by applicant correctional facilities under the terms of an Accreditation Contract which each facility signs with ACA.  No federal grants or other monies are used to fund any part of ACA's accreditation program.

9.      Compliance with ACA's standards is completely voluntary.

10.     The Harrison County Adult Detention Facility ("the Facility") entered into an Accreditation Contract with ACA on May 3, 2005.  The Accreditation Contract, a copy of which is attached hereto as Exhibit A, does not require ACA to provide, and ACA did not provide, training, instruction or supervision to or for the benefit of anyone working in the Facility. Rather, ACA did that which the Accreditation Contract provided, namely, ACA representatives inspected the Facility to determine whether the Facility was, on the date of the inspection, in compliance with applicable ACA Standards.  ACA had nothing whatsoever to do with the hiring, retention or discipline of any person employed by or working in the Facility. The Accreditation Contract contains no reference either to the residents of Harrison County, Mississippi, or to those incarcerated in the Facility.

11.     ACA's publication entitled Standards for Adult Local Detention Facilities, Third Edition, most recently supplemented in 2004, was applicable to the Facility in May, 2005.  In order for the Facility to obtain reaccreditation, it was required to be in compliance with one hundred percent (100%) of the 41 Mandatory ACA Standards and at least ninety-five percent (95%) of the 390 Non-Mandatory ACA Standards applicable to it.

12.     When inspected by three ACA-appointed auditors on May 16-18, 2005, the Facility was in compliance with 100% of all applicable Mandatory Standards and with 97.1% of all applicable Non-Mandatory Standards for Adult Local Detention Facilities.  The Facility was reaccredited by ACA's Commission on Accreditation for Corrections on August 7, 2005.

13.     No representatives of ACA were present at the Facility at the time of the acts alleged to have caused the death of Jessie Lee Williams, Jr.

FURTHER AFFIANT SAYETH NOT.

JAMES A. GONDLES, JR.

Sworn to and subscribed before me this
25th day of ___may_____, 2007.

_____
Notary Public

My commission expires: _July 1, 2007_

AMERICAN CORRECTIONAL ASSOCIATION

## ACCREDITATION CONTRACT

THIS CONTRACT is made by and between the American Correctional Association, hereinafter referred to as the "Association," and the undersigned, the Harrison County Adult Detention Facility, hereinafter referred to as the "Agency."

W I T N E S S E T H:

WHEREAS, the Association has been established and exists for the purpose of improving correctional agencies, institutions and programs through the process of accreditation; and,

WHEREAS, accreditation is a process administered by an impartial, elected Commission which certifies whether or not an agency, institution or program meets and maintains compliance with American Correctional Association standards in order to be accredited; and,

WHEREAS, the Association has developed the Manual of <u>Standards for Adult Local Detention Facilities</u>, third edition, and the <u>2004 Standards Supplement</u>, containing standards approved for the accreditation of such agencies, facilities, and programs; and,

WHEREAS, the Commission is in the process of accrediting Adult Local Detention Facilities throughout the United States; and,

WHEREAS, the Agency realizes the benefits accruing from accreditation and wishes to seek accreditation from the Commission.

NOW, THEREFORE, in consideration of the mutual covenants and conditions, the parties hereby agree as follows:

1.    The Agency:

    a.    Accepts the standards and criteria for accreditation, including subsequent modifications or amendments thereto;

    b.    Has statutory and/or other legal authority to enter into this Contract with reference to its decision to seek accreditation for the following specified agencies, facilities or programs:

Harrison County Adult Detention Facility

    c.    Will adhere to the policies and procedures of the Commission and the Association with reference to the accreditation process as stated in the <u>Agency Manual of Accreditation Policy and Procedure</u>, and other documents supplied by the Association; and,

    d.    Will strive at all times to achieve and/or maintain the accreditation status, as specified in the <u>Agency Manual of Accreditation Policy and Procedure.</u>

2.    The Association shall:

    a.    Use only standards approved by the American Correctional Association in the accreditation process, making judgments of compliance based on written documentation, visual confirmation, or both;

    b.    Provide information on the accreditation program and process, and the participation of the

EXHIBIT

A

agency, facility or program therein, to the Agency's governing and/or contract authority;

c.    Conduct an orientation to the accreditation program and process, if requested, at the Agency's expense;

d.    Cooperate with the Agency, its Administrator, Accreditation Manager and staff in requests for assistance, information, and materials required in the implementation and conduct of the accreditation process;

e.    Appoint all auditors/consultants based upon their experience and demonstrated knowledge;

f.    Conduct reconsideration hearings using procedures approved by the Association and the Board of Commissioners;

g.    Maintain, in accordance with its policies and procedures, confidentiality of all documents submitted as part of the accreditation process, including, but not limited to, the Self-Evaluation Report and the Visiting Committee Reports;

h.    Provide to the agency, facility, or program if awarded accreditation, a Certificate of Accreditation; this certificate shall identify the agency, facility, or program and the year in which accreditation is awarded; the certificate and all copies and facsimiles remain the property of the American Correctional Association, and shall be returned to the Association upon the expiration or loss, for any reason, of accreditation; and,

i.    Publish the name of the accredited agency, facility, or program in an annual summary.

3.    The Agency hereby covenants and agrees to pay an accreditation fee in the amount of **$10,100.00**, payable without deduction or refund as stipulated in the following schedule:

a.    In consideration of preparation, planning and activating the accreditation process for the herein named agency, facility, or program which involves staff time and other expenses, 50% of the total accreditation fee **$5,050.00** shall be payable within 30 days from the commencement of this contract, but not later than July 6, 2005.

b.    In consideration of completion of the standards compliance audit, the remaining 50% of the total accreditation fee **$5,050.00** shall be due on January 6, 2006, or 30 days after completion of the audit, whichever comes first.

4.    The Agency hereby agrees to pay in addition to the accreditation fee provided for in paragraph 3 the actual cost of a reaudit, plus 25% administrative fee, not to exceed $3,000.00, for any reaudit necessary to verify required minimum levels of compliance with standards and/or compliance with life-health-safety standards found in non-compliance at the time of the standards compliance audit or monitoring visit.

5.    The Agency agrees to pay, in addition to the other accreditation fees provided herein, for the actual cost of field consultation services to the facility/program, which are requested in writing by the agency. The cost will be the actual expenses of the visit plus 25% administrative fee, not to exceed $3,000.00.

6.    a.    This Contract shall be effective upon signing by the second party, and shall remain in full force until the earlier of 3 years after accreditation is granted or the Contract is terminated pursuant to subparagraph b).

b.    The Agency may terminate this Contract upon 30 days written notice to the Association. The Association may terminate this Contract for cause, upon 30 days written notice to the Agency. The Association's decision of termination may be appealed by the Agency within 30 days of notification of the decision.

c.    This contract will automatically expire 24 months from the date of execution by the Association in the event that a standards compliance audit has not occurred.

d.    All accreditation, administrative, and annual fees due are payable as of the effective date of termination, shall remain a debt to the Association, and all fees paid are non-refundable.

7.    This Contract shall be governed in all respects by the laws of the State of Mississippi.

IN WITNESS WHEREOF, the parties hereto have caused this contract to be signed by their duly authorized representatives. The dates of the contract period will be adjusted in accordance with the date of the agency's signature.

For the:

**HARRISON COUNTY ADULT DETENTION FACILITY**

By: _____

Title: _____Sheriff_____

Date: ___4·22·05___

For the:

**AMERICAN CORRECTIONAL ASSOCIATION**

By: _____

Title: _Executive Director_

Date: ___5-3-05___