**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**ESTATE OF JESSIE LEE**
**WILLIAMS, JR.**                                                           **PLAINTIFF**

**v.**                                                  **Civil Action No.: 1:06cv196LG-JMR**

**HARRISON COUNTY, MISSISSIPPI, ET AL.**                      **DEFENDANTS**


**MEMORANDUM IN SUPPORT OF AMERICAN**
**CORRECTIONAL ASSOCIATION'S MOTION TO DISMISS**

The Defendant, American Correctional Association ("ACA"), by and through counsel, hereby submits its Memorandum in Support of its Motion to Dismiss and states as follows:

STATEMENT OF THE CASE

The Plaintiff, the Estate of Jessie Lee Williams, Jr. (hereinafter "Plaintiff"), is pursuing claims arising out of the death of Jessie Lee Williams, Jr. ("Mr. Williams" or "the Deceased"), which death is alleged to have resulted from Mr. Williams' incarceration at the Harrison County Adult Detention Facility ("the HCADF") in Gulfport, Mississippi.  More specifically, the Plaintiff alleges that, upon intake into the HCADF on February 4, 2006, Mr. Williams was subjected to an unjustified beating at the hands of employees of the HCADF, which beating led to Mr. Williams' death.

The Plaintiff initially filed this action against numerous other defendants and did not include the Defendant, ACA.  The initial defendants were Harrison County, Mississippi; the Harrison County Sheriff Department; the Sheriff, Director of Corrections and numerous employees at the HCADF; and the third-party medical services provider at the HCDAF.  Plaintiff's First Amended Complaint added, among others, ACA and the City of Gulfport, as defendants.

The Plaintiff alleges that Mr. Williams was deprived of his constitutional rights by all of the defendants (Counts I-III of the First Amended Complaint) and that the deputies who allegedly assaulted him were not properly trained or supervised by certain defendants, including ACA (Count IV of the First Amended Complaint).

The Plaintiff also alleges, with respect to some of the defendants (not including ACA), that the deputies whose conduct is in question were negligently hired and were not properly disciplined (Count V of the First Amended Complaint); and that some of the defendants (not including ACA) battered the Deceased (Count VI.A. of the First Amended Complaint), assaulted the Deceased (Count VI.B.), conspired to cause the beating death of the Deceased (Count VI.C.), breached a fiduciary duty to the Deceased by not providing him with adequate medical care (Count VI.D.), committed the common law tort of outrage by their involvement in the beating death of the Deceased (Count VI.E.), intentionally inflicted emotional distress upon the Deceased (Count VI.F.), and slandered the Deceased by their comments to the media (Count VI.G.).

Finally, the Plaintiff alleges in Count VI.I. of the First Amended Complaint that (a) the Deceased was a third party beneficiary of the 2005 contract between ACA and the HCADF pursuant to which ACA inspected and accredited the HCADF; (b) ACA breached its contract when it knew or should have known that the HCADF was not operated in accordance with ACA standards; and (c) that the breach by ACA directly and proximately caused the death of Mr. Williams. Plaintiff seeks injunctive relief, none of which applies to ACA, and compensatory and punitive damages from all defendants, including ACA.

FACTUAL BACKGROUND

ACA is a private, not-for-profit corporation organized under the laws of the State of New York and exempt from federal income taxation under section 501(c)(3) of the Internal Revenue Code as a charitable, educational organization.[1]  ACA's offices are located in Alexandria, Virginia.  *See* Affidavit of James A. Gondles, Jr. at ¶¶3, 4.

ACA's over 20,000 members include corrections officials and officers, sheriffs, probation and parole officers, members of the judiciary, ex-offenders and others interested in the improvement of correctional systems in the United States and abroad.  *See* Gondles Aff. at ¶3.

Through the use of its Commission on Accreditation for Corrections, ACA maintains a private, non-governmental, voluntary accreditation program pursuant to which correctional facilities may apply for ACA accreditation.  *See* Gondles Aff. at ¶5.  Accreditation is based upon an applicant correctional facility's demonstration, at the time of the accreditation inspection, of compliance with standards adopted by ACA.  Facilities are accredited for a period of three years following an audit or inspection of the facility by representatives of ACA.  *See* Gondles Aff. at ¶5.  Because the accreditation program is entirely voluntary, ACA has no authority to require a correctional facility to adopt any procedures or to change any existing procedures; rather, ACA's sole authority is to deny accreditation or reaccreditation to any facility found not to be in compliance with ACA's standards. *See* Gondles Aff. at ¶6.

The HCADF entered into an Accreditation Contract with ACA on May 3, 2005.  The Accreditation Contract, a copy of which is attached to the Gondles Affidavit as Exhibit A, required

---

[1]Background information regarding ACA is contained in the Affidavit of James A. Gondles, Jr., ACA's Executive Director, attached as Exhibit "A" to ACA's Motion to Dismiss.  Mr. Gondles has overall responsibility for the operation of ACA and its programs, including ACA's correctional facility accreditation program.  *See* Gondles Aff. at ¶ 2.

ACA to inspect the HCADF to determine whether it was in compliance with applicable ACA Standards. ACA did not participate in the hiring or retention of HCADF deputies and did not provide training, instruction or supervision to anyone or for the benefit of anyone working in the HCADF, including its deputies. *See* Gondles Aff. at ¶10. To the extent that the First Amended Complaint alleges otherwise, the Plaintiff is mistaken regarding the role of ACA in its accreditation process.

ACA's publication entitled <u>Standards for Adult Local Detention Facilities</u>, 3rd edition, most recently supplemented in 2004, was applicable to the HCADF inspection in May, 2005. In order for the HCADF to obtain reaccreditation, it was required to be in compliance with one hundred percent (100%) of the 41 Mandatory ACA Standards and at least ninety-five percent (95%) of the 390 Non-Mandatory ACA Standards applicable to it. *See* Gondles Aff. at ¶11.

When inspected by three ACA-appointed auditors on May 16-18, 2005, the HCADF was in compliance with 100% of all applicable Mandatory Standards and with 97.1% of all applicable Non-Mandatory Standards for Adult Local Detention Facilities. As a result, the HCADF was reaccredited by ACA's Commission on Accreditation for Corrections on August 7, 2005. *See* Gondles Aff. at ¶12.

Consistent with the allegations of the First Amended Complaint, no representatives of ACA were present at the HCADF at the time of the commission of the acts alleged to have caused the death of Mr. Williams. *See* Gondles Aff. at ¶13. The arrest and subsequent death of Mr. Williams did not occur until February, 2006.

## **ARGUMENT**

I.     PLAINTIFF'S CONSTITUTIONAL CLAIMS MUST BE DISMISSED AS AGAINST THE DEFENDANT, ACA.

In the First Amended Complaint, the Plaintiff alleges in Counts I-III that the Estate is entitled to damages as a result of the defendants' alleged violations of sections 1983 (deprivation of the Deceased's constitutional rights), 1985 (conspiracy to deprive the Deceased of his constitutional rights) and 1986 (failure to prevent such conspiracy) of Title 42 of the United States Code. ACA submits that each of these causes of action fails to state a claim against it as a matter of law and must be dismissed for the reasons set forth below.

A.     ACA IS NOT A PROPER DEFENDANT IN AN ACTION ALLEGING DEPRIVATION OF CONSTITUTIONAL RIGHTS BECAUSE IT IS A PRIVATE, NON-GOVERNMENTAL ENTITY.

The Plaintiff asserts that Jessie Williams, Jr. was deprived of his Fifth, Eighth, and Fourteenth Amendment rights, all allegedly in violation of 42 U.S.C. § 1983.[2] To state a claim under section 1983, a plaintiff must allege facts tending to show (1) that plaintiff has been "deprived of a right 'secured by the Constitution and the laws' of the United States," and (2) that the deprivation

---

2. It should be noted that neither the Fifth or Eighth Amendment are applicable in this case. The Eighth Amendment does not apply since Williams had not been convicted of a crime. The State does not acquire the power to punish until after it has secured a formal adjudication of guilt in accordance with due process of law. Ingraham v. Wright, 430 U.S. 651, 671, n.40, 97 S.Ct. 1401, 1412, n.40 (U.S. 1977). Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment. Id. The Fifth Amendment is inapplicable here because it applies only to violations of constitutional rights by the United States or a federal actor. Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000). At no point in the First Amended Complaint does Plaintiff allege that ACA or any other defendants at any time acted under the authority of the federal government.

was caused by a person or persons acting "under color of" state law.  Flagg Bros. v. Brooks, 436 U.S.

149, 98 S. Ct. 1729 (1978).[3]

Private action may be deemed state action under section 1983 only when the challenged

conduct may be "fairly attributable to the state."  Lugar v. Edmondson Oil Co., 457 U.S. 922, 937,

102 S.Ct. 2744, 2753 (1982).  The Lugar Court provided a two-part "fair attribution" test, as follows:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible ... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state.

Lugar, 457 U.S. at 937, 102 S.Ct. at 2753-54.

Defendant ACA submits that its status as a private party is beyond dispute.  Three types of

analyses have been used by courts to determine whether or not a private party will be deemed a state

actor.  Under the state compulsion test, the issue is whether the private party's conduct at issue is

actually compelled or coerced by the state.  Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777,

2786 (1982).  Under the joint action or nexus test, state action may be found when the government

has "so far insinuated itself into a position of interdependence with the private actor that it was a

joint participant in the enterprise."  Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449,

457 (1974).  Finally, under the public function test, the issue is whether the private party is

performing a function traditionally within the exclusive province of, or exclusively reserved to, the

state.  Bass v. Parkwood Hospital, 180 F.3d 234, 242 (5th Cir. 1999).  Plaintiff fails to allege, and

---

3. Tellingly, the list of defendants alleged in paragraph 39 of the First Amended Complaint to have been acting pursuant to official, governmental policies, regulations, decisions, custom, usage or practice does not include ACA.

cannot allege, sufficient facts to show that ACA is a state actor for purposes of Plaintiff's constitutional deprivation claims, under any of the three approved methods of analysis.

When we examine the relationship between ACA and the state in this case under the state compulsion test, ACA prevails. As stated above, a private entity becomes a state actor when the state compels or coerces the conduct of the private actor. There is no evidence of coercion by the state in this case. ACA is not controlled or regulated by the state. Interestingly, extensive regulation by the government does not transform private action into state action. Roberts v. Cameron-Brown Co., 556 F.2d 356, 358 (5th Cir. 1977).

No government entity or agency has any control over the accreditation services provided by ACA, other than deciding whether or not the entity or agency wishes to take advantage of such services by seeking accreditation. ACA's accreditation program is purely voluntary, and no government agency or employee has the authority to order ACA to investigate or accredit any facilities or to direct the investigations in any way. *See* Gondles Aff. at ¶7. In addition, ACA has no authority over the facility, other than to investigate and grant or deny accreditation. *See* Gondles Aff. at ¶6. Nothing in the First Amended Complaint suggests that the State of Mississippi, Harrison County or any other governmental entity coerced or compelled any action by ACA. ACA cannot be deemed a state actor due to any compulsion by the state.

Under the "joint action" or "nexus" test, private actors such as ACA can be found to have acted under color of law only if they are "willful participants in joint action with the state or its agent." Dennis v. Sparks, 449 U.S. 24, 27 (1980). ACA is a private and completely independent, non-profit, tax-exempt, charitable, educational organization. *See* Gondles Aff. at ¶¶3-4. ACA and its accredited correctional facilities do have a contractual relationship pursuant to which the facilities are inspected and accredited. A contractual relationship between a government agency and a private

7

party, standing alone, is insufficient to convert a private action into a state action.  National Collegiate Athletic Association v. Tarkanian, 488 U.S. 179, 194-95 (1988).  ACA receives fees for its accreditation services only from those facilities seeking accreditation; no federal grant funds are used in the accreditation program.  *See* Gondles Aff. at ¶8.  Because ACA's accreditation program is not a joint undertaking with the State of Mississippi, Harrison County or any other governmental entity, there is not a sufficient "nexus" between ACA and any government entity to deem ACA to be a state actor under this test.

Under the "public function" test, it is clear that ACA does not, in establishing and operating its accreditation program, provide a service or function reserved exclusively to the state.  While the State of Mississippi and Harrison County are empowered to control the conditions of confinement experienced at correctional facilities such as the HCADF, ACA, through its accreditation program, exercises no power over those conditions.  ACA merely provides accreditation services to those facilities desiring to seek accreditation.  See McKeesport Hospital v. The Accreditation Council for Graduate Medical Education, 24 F.3d 519 (3d. Cir. 1994) (holding that a private graduate medical school accrediting council's decisions on accreditation do not constitute state action).

The State of Mississippi and Harrison County are the entities with authority to control HCADF, not ACA.  ACA's accreditation program is a private accreditation program powerless to change how a local correctional facility operates.  ACA's program is not a program which serves the traditional public function of regulating and operating correctional facilities.  The Plaintiff has not asserted, nor could it assert any facts tending to suggest that ACA's accreditation program performs a function exclusively reserved for the government.  Thus, it cannot be said that ACA has assumed a power which is traditionally exercised by the government.

The Plaintiff is unable to allege any facts that would support a claim that ACA acted under "color of state law" in accrediting the HCADF. Thus, Count I of the First Amended Complaint should be dismissed as against ACA for failure to state a claim upon which relief can be granted.

      B.      COUNT II MUST BE DISMISSED AS AGAINST ACA ON THE BASIS THAT ACA IS NOT ALLEGED TO HAVE PARTICIPATED IN THE CONSPIRACY TO DEPRIVE THE DECEASED OF HIS CONSTITUTIONAL RIGHTS.

The allegations made in Count II of the First Amended Complaint assert that there existed an agreement among state and county officials and employees (a) "to teach the Deceased…a lesson" by utilizing excessive force by beating the Deceased (Paragraph 43); (b) not to intervene in such beating (Paragraph 44); (c) to prepare and disseminate allegedly false reports regarding the presence of illegal drugs in the body of the Deceased (Paragraph 45); and (d) to misreport the Deceased's medical condition to paramedics, thereby resulting in an inappropriate medical treatment plan (paragraph 46). The First Amended Complaint purports to assert a claim under 42 U.S.C. § 1985, but the Plaintiff's allegations do not identify which of the types of actionable conspiracies are alleged to have occurred.[4] ACA is not named as a participant or even mentioned in the allegations set forth in Paragraphs 43-47 of the First Amended Complaint.

Since ACA is not a governmental entity, its representatives are not state officials or employees. No representative of ACA is alleged either to have been present at the time of the beating or to have been otherwise a party to this alleged conspiracy. Finally, the First Amended Complaint does not allege that ACA or any other defendant acted with racial animus. For these reasons, Count II of the First Amended Complaint must be dismissed against ACA for failure to state

---

4. Section 1985 limits recovery to the following types of conspiracies: (1) Preventing officer from performing duties; (2) Obstructing justice; intimidating party, witness, or juror; or (3) Depriving persons of rights or privileges. 42 U.S.C. § 1985.

a claim upon which relief can be granted.  See  Naguib v. Illinois Dept. of Professional Regulation,

986 F. Supp. 1082, 1095 (N.D.Ill. 1997) (dismissing § 1985 complaint where defendant was not

alleged to be a member of purported conspiracy and was not claimed to have acted with any

discriminatory animus).

> C.    COUNT III MUST BE DISMISSED AS AGAINST ACA ON THE ADDITIONAL
> GROUND THAT IT HAD NO POWER OR AUTHORITY TO THWART ANY
> SUCH CONSPIRACY.

In Count III of the First Amended Complaint, the Plaintiff asserts that all of the defendants

are liable under 42 U.S.C. § 1986 for negligent failure to prevent the conspiracy alleged in Count II.

Since a valid Section 1985 claim is a prerequisite to a Section 1986 claim, this Count must also fail.

See Bryan v. City of Madison, Miss., 213 F.3d 267, 276 (5th Cir. 2000).  Moreover, no

representative of ACA is alleged to have been present at the HCADF at any point near the time of the

alleged conspiracy.  Assuming hypothetically and solely for purposes of this Rule 12(b)(6) motion

that the Plaintiff's Section 1985 and Section 1986 claims had been properly pled and that ACA knew

or should have known of the use of excessive force in the HCADF, Count III would still fail to state

a claim for relief against ACA, since ACA would have been powerless to thwart the alleged

conspiracy.  As a non-governmental organization operating a purely voluntary accreditation program,

ACA's sole authority is to deny accreditation to an applicant which it finds not to be in compliance

with applicable ACA standards.  ACA may not mandate that any correctional facility change its

procedures or terminate any employees.

ACA therefore submits that, as a matter of law, it cannot be held liable for negligent failure to

prevent a conspiracy under 42 U.S.C. § 1986.  Even assuming that ACA had known of the alleged

instances of inappropriate use of force in the HCADF, its sole authority would have been to deny

reaccreditation to the facility. ACA's actions could not have prevented the acts alleged to have been committed by certain other defendants.

II.    PLAINTIFF'S PENDENT STATE LAW CLAIMS MUST BE DISMISSED AS AGAINST ACA.

    A.    PLAINTIFF INCORRECTLY ALLEGES IN COUNT IV THAT ACA PROVIDED TRAINING AND SUPERVISION TO HCADF DEPUTIES.

In paragraphs 54-56 of the First Amended Complaint, Plaintiff alleges that certain defendants, including ACA, were negligent in failing to adequately train and supervise the HCADF deputies who are alleged to have beaten the Deceased. Plaintiff mischaracterizes the services performed by ACA as an accrediting organization.

Although one of ACA's standards applicable to the HCADF requires deputies and other staff to undergo regular, recurring training, ACA does not provide the training for the detention facility staff. *See* Gondles Aff. at ¶10. This is confirmed by the provisions of the Accreditation Contract entered into between ACA and the HCADF. *See* Gondles Aff., Ex. A. Further, ACA is not involved in the supervision of deputies or any other staff at the HCADF or any other facility going through the ACA accreditation process. *See* Gondles Aff. at ¶10. In conducting an audit or assessment, ACA representatives are on site at a correctional facility for a limited time. In this case, the representatives visited the HCADF on May 16-18, 2005. The representatives did not return to HCADF after those dates. *See* Gondles Aff. at ¶12.

Since ACA was not involved in the training and supervision of the persons alleged to have deprived the Deceased of his constitutional rights and since it has no obligation to be involved in the training and supervision of the persons alleged to have deprived the Deceased of his constitutional rights, ACA cannot be held legally responsible for any such deprivation under a theory of negligent

11

failure to train or supervise.  <u>See</u> <u>Thompson v. Upshur County, TX,</u> 245 F.3d 447, 459 (5th Cir. 2001); <u>see also</u> <u>Whiting v. Tunica County</u>,  222 F. Supp.2d 809, 816 (N.D. Miss. 2002).

Because the role of ACA in its accreditation process did not include any training or supervision of any staff at the HCADF, Count IV of the First Amended Complaint should be dismissed as against ACA for failure to state a claim upon which relief can be granted.

      B.    THE ALLEGATIONS OF COUNT V AND COUNTS VI.A. THROUGH VI.H. MUST BE DISMISSED BECAUSE THEY ARE NOT APPLICABLE TO ACA.

            1.    Count V Must Be Dismissed Because ACA is Not Alleged to Have Been Involved in the Hiring, Retention or Disciplining of the Defendant Deputies.

Plaintiff's claim for "Negligent Hiring, Retention and Failure to Discipline or Take Necessary Corrective Action" (Count V of the First Amended Complaint) must fail against ACA because the Plaintiff does not allege, nor could it allege that ACA was in any manner involved in the hiring, retention, or discipline of the individuals whose conduct is alleged to have deprived Williams of his civil rights.  ACA did not hire the deputies and played no role in any decision regarding their discipline or their retention as employees of the HCADF.  *See* Gondles Aff. at ¶10.

            2.    ACA is Not a Proper Defendant in the Pendent State Claims Arising Directly from the Alleged Mistreatment of the Deceased.

Plaintiff's claims of assault and battery (Counts VI.A. and VI.B.) allege a physical beating of the Deceased by defendants who are not alleged to be representatives of ACA.  Plaintiff's "Civil Conspiracy" claim (Count VI.C.) arises out of the alleged conduct of defendants, who are not alleged to be representatives of ACA, joint participation in the beating of the Deceased.  Plaintiff's claim for "Breach of a Non-Delegable Fiduciary Duty" (Count VI.D.) arises out of the alleged conduct of defendants, who are not alleged to be representatives of ACA, failing to provide appropriate medical care upon the Deceased's incarceration.  It is undisputed that no representatives of ACA were present

at any point during the Deceased's incarceration.  *See* Gondles Aff. at ¶13.  As a result, ACA submits that these claims cannot be maintained against it and should be dismissed for failure to state a claim upon which relief can be granted.

Plaintiff's claims for "The Common Law Tort of Outrage" (Count VI.E.), "Intentional Infliction of Emotional Distress" (Count VI.F.) and "Wrongful Death" (Count VI.G.) all are based upon defendants' "overall conduct on the date in question."  First Amended Complaint at ¶73. Because the First Amended Complaint contains no allegations as to ACA's conduct on the date of the Deceased's incarceration, these claims too must fail against ACA.  There are no allegations of any contact between any representatives of ACA and the Deceased.

Plaintiff's claims for "Slander and Slander Per Se" (Count VI.H.) are explicitly based on statements alleged to have been made by Sheriff George Payne and other unknown deputies of the Harrison County Sheriff Department.  Neither ACA nor any of its representatives is alleged to have slandered the Deceased.  As a result, this claim must also be dismissed as to ACA.

C.    COUNT VI.I. OF THE FIRST AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST ACA.

1.    The Deceased Was Not A Third Party Beneficiary to the Accreditation Contract.

Plaintiff alleges that the Deceased is entitled to bring an action against ACA for breach of the Accreditation Contract entered into between ACA and the HCADF.  First Amended Complaint at ¶¶85-88; <u>see</u> Gondles Aff., Ex. A.  Setting aside for the moment whether Plaintiff has alleged a breach of the Accreditation Contract or damage or injury flowing from the alleged breach, ACA submits that Plaintiff's claim must fail because the Deceased was not a third party beneficiary to the contract.

13

Although a third person may enforce a promise made for his benefit even though he is a stranger to the contract or to the consideration, the right of a third party beneficiary to maintain an action on the contract must "spring" from the terms of the contract itself. Mississippi High School Activities Assn, Inc. v. Farris, et al., 501 So.2d 393, 395-97 (Miss. 1987). A third party beneficiary may sue for a breach of the contract "only when the condition which is alleged to have been broken was placed in the contract for his direct benefit. A mere incidental beneficiary acquires by virtue of the contractual obligation no right against the promisor or promisee." Id.

While Mississippi has not had the occasion to address third party beneficiary claims brought by inmates regarding contracts relating to their incarceration, courts in other jurisdictions have held that such claims must fail because the inmate is not entitled to sue as a third party beneficiary under such contracts. In Miller v. Corrections Corp. of America, 375 F. Supp.2d 889 (D. Alaska 2005), an inmate, claiming to be a third party beneficiary to a contract between the State of Alaska and the private company hired to operate the correctional facility, brought an action against the operator of the facility. The contract provided that "[a]ll Prisoners shall be entitled to necessary medical, dental, and mental health services comparable in quality to those available to the general public [and] will not deny medical care which is necessary to enable a Prisoner to participate in or benefit from rehabilitative services." Id. at 902-03. The plaintiff claimed that this contract language created a duty on the part of defendant to provide adequate and reasonable health care to prisoners. The plaintiff argued that, as long as the parties intended one of the benefits to be for the prisoners, he was a third party beneficiary; the plaintiff argued that he could not be considered merely an incidental beneficiary when the express contract language gave him a right "to necessary medical, dental, and mental health services comparable in quality to those available to the general public." Id. at 903.

14

The court in <u>Miller</u> examined the contract in question and rejected the plaintiff's claim, finding that the contract evinced no intent that the correctional facility operator would be liable to the prisoners if it failed to perform under the contract to operate the correctional facility. <u>Id.</u> at 904. The contract set forth many duties and responsibilities that defendant was to undertake for the benefit of the other party to the contract, the State of Alaska. Although the prisoners also benefited when the defendant performed its contractual duties and obligations (as evidenced by the provisions of the contract to which the plaintiff had cited), the court held that the existence of a benefit to the inmates did not mean that the prisoners had a right, under the contract, to demand performance by defendant. <u>Id.</u> Since the contract at issue evidenced no intent that the inmates be third party beneficiaries, defendant was awarded judgment as a matter of law on plaintiff's claim. <u>Id.</u>

In <u>Gay v. Georgia Dept. of Corrections,</u> 606 S.E.2d 53 (Ga. App. 2004), an inmate brought a third party beneficiary claim against an association which had contracted with the Georgia Department of Corrections to provide "a safe workplace for inmate work details." <u>Id.</u> at 57. The plaintiff alleged that the association had failed to provide such a safe workplace and that this failure resulted in the plaintiff's injury. The court held that the association could not be held liable to the plaintiff on a third party beneficiary claim because the association did not agree to render performance specifically to the inmates. <u>Id.</u> When viewed as a whole, the contract made clear that the primary responsibility for inmate safety resided with the state Department of Corrections and that the benefit of a safe workplace was incidental to the contract. <u>Id.</u> at 58.

Finally, and most notably, the North Dakota Court of Appeals rejected a third party beneficiary claim against the American Correctional Association brought by an inmate at a state penitentiary. <u>Jensen v. Zuern</u>, 517 N.W.2d 118 (N.D. App. 1994). The <u>Jensen</u> plaintiff alleged

constitutional violations by ACA as a result of ACA's accreditation of the state penitentiary, which penitentiary allegedly maintained unconstitutional conditions of confinement. The court held that "ACA's contract to provide accreditation services to the penitentiary does not render its conduct under color of state law, and [the plaintiff's] claim that he was somehow a third-party beneficiary of that contract is meritless." Id. at 124. Here, as in Jensen, the Plaintiff's third party beneficiary claim must fail.

In this case, the Accreditation Contract provides that, for the benefit of the HCADF, ACA auditors will inspect the HCADF facility to determine whether it is in compliance with applicable ACA standards. The Accreditation Contract does not even mention persons incarcerated in the HCADF, let alone provide them with any rights under said contract. While prisoners no doubt benefit indirectly to the extent that ACA's accreditation may improve their conditions of confinement, there is no indication, from the terms of the Accreditation Contract itself, that ACA and the HCADF intended that prisoners be entitled to sue for alleged breaches of the agreement, or that prisoners are to be considered direct beneficiaries of that agreement. If a contractor hired to operate a correctional facility on a daily basis, i.e., to replace government employees who would otherwise operate such a facility, was not subject to a breach of contract action brought by a prisoner, as was the case in Miller, supra, then it is inconceivable that ACA would be subject to such an action. ACA was a contractor hired to spend three days in May, 2005, to inspect and then, depending upon the results of the inspection, to accredit the HCADF or to refuse to accredit the HCADF.

For this reason, Count VI.I. of the First Amended Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

    2. Plaintiff Has Failed to Allege Facts Constituting a Breach of the Accreditation Contract by ACA.

Plaintiff alleges that "ACA breached its contract with Harrison County, Mississippi, and its third party beneficiaries, Jessie Lee Williams, Jr., and the citizen [sic] of Harrison County, Mississippi, when it knew or reasonably should have known that the Harrison County Adult Detention Center [sic] was not operating pursuant to its mandated standards, policies and procedures." First Amended Complaint at ¶88.

ACA's contractual obligations to the HCADF were to inspect the facility in May, 2005, and to determine, based upon said inspection, whether the facility was being operated in conformance with ACA's <u>Standards for Adult Local Detention Facilities</u> Third Edition (Supp. 2004). *See* Gondles Aff. at ¶11. The HCADF was inspected and found to be in compliance, resulting in an award of reaccreditation on August 5, 2005. *See* Gondles Aff. at ¶12. Nothing alleged by Plaintiff constitutes a breach by ACA of its contractual obligation to the HCADF. Plaintiff does not and could not allege that accreditation of the HCADF in 2005, based upon a May, 2005, inspection, was inappropriate because of events which occurred in February, 2006.

>    3.    Even Assuming a Breach of Contract by ACA, Plaintiff Has Not Alleged Facts Sufficient to Tie Such Breach Causally to the Death of Mr. Williams.

Even if it is assumed that the Plaintiff's allegations are true and that ACA breached the Accreditation Contract through its accreditation of the HCADF in August, 2005, the Plaintiff has still not connected this event with the acts surrounding the death of Mr. Williams. Moreover, even if it was a failure on the part of ACA to revoke the accreditation of HCADF at some point, when it allegedly knew or should have known that the facility was not operated consistently with applicable ACA standards, the Plaintiff has nevertheless failed to allege facts which, if true, causally relate such a breach of contract to Mr. Williams' beating and subsequent death.

17

As set forth above, ACA is powerless to do anything other than to deny or perhaps revoke accreditation. ACA cannot compel any facility, accredited or not, to operate in any particular manner or to adopt or change its procedures. *See* Gondles Aff. at ¶6. Simply stated, ACA could not have acted to prevent the events which happened on February 4, 2006. Even assuming a breach of contract by ACA, any such breach did not cause, and could not have caused, the injury and death of Mr. Williams.

For the foregoing reasons, Count VI.I. should be dismissed as against ACA for failure to state a claim upon which relief can be granted.

## <u>CONCLUSION</u>

Because the Plaintiff has failed to allege any facts that would support a claim that ACA acted under color of law or participated in a conspiracy, Plaintiff's constitutional claims (Counts I-III of the First Amended Complaint) should be dismissed as against ACA with prejudice. Count IV of the First Amended Complaint must be dismissed because ACA does not train or supervise employees of the correctional facilities it inspects and accredits. Counts V. through VI.H. of the First Amended Complaint should be dismissed because they contain no factual allegations concerning ACA. Finally, Count VI.I. of the First Amended Complaint should be dismissed because the Deceased was not a third party beneficiary to the Accreditation Contract between ACA and the HCADF, and Plaintiff has not adequately alleged either a breach of that Contract or a proximate relationship between any such alleged breach and the death of Mr. Williams.

WHEREFORE, ACA respectfully requests that all counts of Plaintiff's First Amended Complaint be dismissed as against ACA with prejudice.

Respectfully submitted,

AMERICAN CORRECTIONAL ASSOCIATION


By: s/ G. Dewey Hembree III
       One of Its Attorneys

**OF COUNSEL:**

G. Dewey Hembree, III (MSB#2247)
McGLINCHEY STAFFORD PLLC
Suite 1100, City Centre South
200 South Lamar Street (Zip 39201)
Post Office Box 22949
Jackson, Mississippi  39225
Telephone: (601) 960-8400
Facsimile: (601) 960-3520

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned G. Dewey Hembree, III, McGlinchey Stafford PLLC, hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

**Benjamin U. Bowden -** bowden@vbwlawfirm.com  smith@vbwlawfirm.com

**Jeffrey S. Bruni  -** jbruni@ci.gulfport.ms.us  khale@ci.gulfport.ms.us

**Michael W. Crosby  -** michaelwcrosby@bellsouth.net

**James L. Davis , III -** JamesLDavisIII@aol.com

**Cyril T. Faneca -** Cy@ddkf.com  Mary@ddkf.com  Peggy@ddkf.com  Trace@ddkf.com
hbroom@ddkf.com  BRLong@ddkf.com

**James Bailey Halliday -** JBHALLIDAYESQ@EARTHLINK.NET

**Walter T. Johnson -** wjohnson@watkinseager.com  lslaven@watkinseager.com

**Joseph R. Meadows -** jmeadows@datasync.com  ritapls@datasync.com

**Robert H. Pedersen -** bpedersen@watkinseager.com  charrington@watkinseager.com

**Robert W. Smith -** rwsmithatty@bellsouth.net

**John H. Whitfield -** johnwhitfield@bellsouth.net  herman_m@bellsouth.net

**William E. Whitfield , III -** whitbill@bryantdukes.com  whitbill@aol.com

**Karen Jobe Young -** kyoung@datasync.com  ritapls@datasync.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participant(s):

**Lindy Denise Brown**
WATKINS & EAGER
P. O. Box 650
Jackson, MS 39205-0650

THIS, the 6th day of June, 2007.

s/  G. Dewey Hembree, III
G. Dewey Hembree, III

20