IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ESTATE OF JESSIE LEE WILLIAMS, JR.                                                    PLAINTIFF

VERSUS                                                              CIVIL ACTION NO. 1:06cv196LG-JMR

AMERICAN CORRECTIONAL ASSOCIATION                                         DEFENDANT

MEMORANDUM OPINION

This matter is before the Court on the motion of the defendant, American Correctional Association [ACA] to dismiss [79-1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted, or in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court, having reviewed the briefs, finds as follows.

Findings

ACA is a private, not-for-profit corporation organized under New York law and exempt from federal income taxation under section 501(c)(3) of the Internal Revenue Code as a charitable educational organization. (Ct. R., Doc. 79-2, p. 2.) ACA membership includes correctional officers and officials, sheriffs, probation and parole officers, members of the judiciary, ex-offenders and others who are all interested in the improvement of correctional systems. (*Id*.) Through its Commission on Accreditation for Corrections, ACA maintains a private, non-governmental, voluntary accreditation program under correctional facilities may apply for ACA accreditation. (*Id*.) Accreditation under this program is based on demonstration of compliance with standards adopted by the ACA at the time the correctional facility is inspected by ACA. (*Id*.) Facilities are accredited for a three-year period following an audit or

inspection of the facility by ACA. (*Id.*) The accreditation program is entirely voluntary, therefore, ACA contends it has no authority to require that a correctional facility adopt or change any procedures. (*Id.*) Rather, ACA can merely deny accreditation or reaccreditation to any facility not in compliance with ACA standards following an inspection. (*Id.*)

The Harrison County Adult Detention center [HCADC] entered an accreditation contract with ACA on May 3, 2005. (*Id.*, p. 3.) The Standards for *Adult Local Detention Facilities*, 3rd edition, published by ACA was applicable to the inspection of the HCADC in May 2005. (*Id.*) To be eligible for reaccreditation, the HCADC had to be in compliance with 100% of the 41 mandatory ACA standards and at least 95% of the 390 non-mandatory ACA standards applicable to the facility. (*Id.*) ACA asserts that none of its representatives were a participant in the events surrounding the death of Jesse Lee Williams, Jr.. (Ct. R., Doc. 79-2, p. 3.)

The Estate of Jessie Lee Williams, Jr., contends that ACA is liable under 42 U.S.C. §§ 1983, 1985, 1986, 1988, the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and corresponding provisions of the Mississippi State Constitution, along with violations of pendent or supplemental state claims for assault, battery, civil conspiracy, breach of a non-delegable fiduciary duty, the tort of outrage, intentional infliction of emotional distress, wrongful death, slander and slander *per se*, and breach of a third party beneficiary contract. (Ct. R., Doc. 3, pp. 20-30, 34.) According to the allegations of the amended complaint, ACA knew or should have known about the implementation of and completion of a conspiracy to deprive the deceased, Jessie Lee Williams, Jr., of his federally protected rights and that such activity regularly took place in the HCADC, especially in the booking area. (Ct. R., Doc. 3, p. 20.)

The contract in this case was between ACA and the HCADC to measure compliance with

ACA standards. (Ct. R., Doc. 79-2, p. 2.) The responsibility for the employees of HCADC lies with HCADC. (*Id*., p. 3.) ACA argues that for liability to attach to ACA, the duty which ACA owed to HCADC must have included within its scope the prevention of risk to inmates. (Ct. R., Doc. 80, p. 16.)

The ACA maintains a voluntary certification program for correctional facilities to apply for ACA accreditation. (Ct. R., Doc. 79-2, p. 3.) The ACA has no authority to either require a correctional facility to seek accreditation or to adopt or change a procedure within a correctional facility. (*Id*., p. 2.) ACA's sole authority is to deny accreditation to a facility which is found not to be in compliance with ACA standards. (*Id*.) No governmental organization requires ACA accreditation of its correctional facilities. (*Id*.)

Standard of Review

Under Rule 12(b) all allegations in the complaint are accepted as true and all inferences are drawn in favor of the non-moving party. *Combs v. Central Tex. Annual Conference of United Methodist Church*, 173 F.3d 343, 344 (5th Cir. 1999). "If, matters outside the pleading are presented to and not excluded by the court, the motion *shall* be treated as one for summary judgment and disposed of as provided in Rule 56. (emphasis added) Fed.R.Civ.P. 12(b); *Baker v. Putnal,* 75 F.3d 190, 197 (5th Cir. 1996). In this case, ACA has presented materials outside the pleading, including an affidavit and a copy of the accreditation contract. (Ct. R., Doc. 79-2.)

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "[t]he pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . .." FED.R.CIV.P. 56©). In determining whether there are any genuine issues of material fact,

this Court must first turn to the applicable law to discern, what factual issues are, indeed, material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must also determine "if the dispute about a material fact is `genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court must view the evidence submitted by the parties in the light most favorable to the nonmoving party. *Stotter v. University of Tex.*, 508 F.3d 812, 820 (5th Cir. 2007).

The moving party bears the initial burden of establishing the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and show that summary judgment is inappropriate. *Breen v. Texas A&M Univ.*, 485 F.3d 325, 331 (5th Cir. 2007).

Discussion

I.      Fifth Amendment Claims

The plaintiff concedes that the claims raised in the amended complaint alleging violations of the Fifth Amendment by ACA should be dismissed because the ACA is not a federal actor. (Ct. R., Doc. 91, p. 7.) The Court concludes that the claims advanced against ACA under the Fifth Amendment to the United States Constitution should be granted.

II      Claims Under 42 U.S.C. § 1983

For liability to attach under 42 U.S.C. § 1983, a defendant must both have acted under color of state law and violated a constitutional right. *See West v. Atkins,* 487 U.S. 42, 48-50 (1988); *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). ACA, a private organization, argues that it cannot be held liable for actions taken by prison employees, in spite

of having accredited the HCADC.  In addition, "personal involvement is an essential element of a civil rights action."  *Thompson v. Steele*, 709 F.2d 381 (5th Cir. 1983), *cert. denied* 464 U.S. 897 (1983).  ACA must have either actively participated in the acts complained of, which did not happen in this case or implemented unconstitutional policies that result in injury.  *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).  The plaintiffs can establish neither of these elements.  Accordingly, the Court concludes that the motion for summary judgment on plaintiffs claims under 42 U.S.C. § 1983 against ACA should be granted.

III.     Claims Under 42 U.S.C. §§ 1985, 1986

The plaintiffs claim that ACA did not conduct an adequate audit of conditions at the HCADC and did not make recommendations to the facility which would have prevented the death of Jesse Lee Williams, Jr.  (Ct. R., Doc. 93-2, p. 14.)  Accordingly, the plaintiffs contend that the ACA adopted the policies, practices and customs which condoned dangerous behavior which was occurring at the facility.  (*Id*.)  According to the allegations of the amended complaint, practices at the HCADC resulted in an atmosphere which condoned the abuse and beating of detainees while those individuals were processed into booking at the facility.  (*Id*., p. 15.)  The plaintiffs further assert that ACA should have indicated that a shortage of personnel in the booking area could cause such incidents.  (*Id*.)

In summary, the plaintiffs contend that the ACA allegedly became a co-conspirator in the scheme or action to deprive persons such as Jesse Lee Williams, Jr., of his constitutional and human rights and are liable for their alleged acts of omission and commission.  (*Id*.)  The conspiracy to deprive Jesse Lee Williams, Jr., of certain protected rights by certain employees of HCADC and was encouraged by their supervisors and sanctioned by the ACA by its failure to

properly recommend, suggest, offer, implement, monitor, review, and audit policies, practices, procedures, and customs to prevent such a conspiracy, according to the plaintiffs' allegations. (*Id*.)

According to the allegations of the first amended complaint outlining the claims under 42 U.S.C. § 1985, "[t]here exists at the Harrison County Adult Detention Center a belief, practice, usage and/or custom that it is perfectly fine to beat and/or abuse detainees who may have "talked too much" while being processed in booking or during transportation to the booking room." (Ct. R., Doc. 3, p. 18.) The plaintiffs further contend that:

> The conspiracy to deprive the Deceased, Jessie Lee Williams, Jr., of certain federally protected rights, privileges and immunities began with a basic agreement among Defendants, Rhodes, Thompson, DeGeorge, Hubbard and Teel, in word, understanding and/or deed. It concluded with acts of cover-up, lies and the preparation of false police reports. It is clear from the facts set forth above that the Defendants willfully and maliciously agreed and conspired to engage in a course of conduct consistent with the edicts, acts, policies, procedures, official decisions and mandates of Harrison County, Mississippi, Sheriff George Payne and/or the Harrison County Sheriff Department that resulted in a blatant violation the Deceased's, Jessie Lee Williams, Jr., constitutional rights through their acts of omission and commission.

(*Id*., p. 19.)

Also the allegations for the claim under 42 U.S.C. § 1986 provide, *inter alia*, as follows:

> There had been previous incidents of abuse and/or allegations of unnecessary use of excessive force reported by the Harrison County Adult Detention Center to the ACA when it sought accreditation from the ACA.
>
> On information and belief last year officials of the Harrison County Adult Detention Center reported that within the preceding 12 months they had received 54 reports of incidents of alleged abuse, 22 of those incidents occurred in the booking department and approximately 11 or more are believed to have involved Teel and Rhodes. There was one specific incident of alleged abuse which the Defendant, Harrison County, Mississippi, by and through its Board of Supervisors, was knowledgeable that was reported in the Summer of 2005 as part and parcel of the quarterly reports that are required to be prepared pursuant to the

> federal consent judgment that referenced an incident involving Rhodes.
>
> * * *
>
> The Defendants, Harrison County, Mississippi, Sheriff George Payne, Director of Corrections Dianne Gaston-Riley, Booking Supervisor Rick Gaston, Gulfport Police Department Officer Kelly Knight, the ACA, other unidentified police officers and deputies and unidentified employees of Health Assurance, LLP, in their individual and official capacities, either intentionally or through their own negligence, failed to immediately report, expose, prevent, intervene, stop or otherwise thwart the conspiracy to deprive the Deceased, Jessie Lee Williams, Jr., and other persons similarly situated, of the equal protections of the laws of this Nation and State notwithstanding the fact that they possessed the authority, duty, power, and ability to halt, annul, void, expose, intervene in or stop the violations before they occurred and/or as they were occurring.

(*Id.*, pp. 20, 21.)

ACA asserts that it is not a governmental entity and that none of its representatives or employees were present at the time of the alleged beating or were a party to the alleged conspiracy. (Ct. R., Doc. 80, p. 9.) ACA further contends that the amended complaint does not allege that ACA acted with racial animus, and fails to state a claim under 42 U.S.C. § 1985. (*Id.*, pp. 9-10.) In addition, ACA asserts that in order to be liable under 42 U.S.C. § 1986, there must be a valid claim under 42 U.S.C. § 1985. (Ct. R., Doc. 80, p. 10.) ACA further asserts that because the plaintiffs have not established a valid claim under § 1985, the claim advanced under § 1986 fails as well. (*Id.*)

To prove a private conspiracy in violation of 42 U.S.C. § 1985, a plaintiff must show that some racial animus lay behind the conspirators' action and the conspiracy was aimed at interfering with federal rights that are protected against private and official encroachment. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993); *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001). In this case, the

complaint does not allege that the conspiracy was based on race. For that reason, the claims advanced under § 1985 fails. Furthermore, because a valid § 1985 claim is a prerequisite to a § 1986 claim, that claim is also invalid. *Newberry v. East Tex. State Univ.,* 161 F.3d 276, 281 n. 3 (5th Cir. 1998). The Court, therefore, concludes that ACA is entitled to summary judgment on claims advanced against it under 42 U.S.C. §§ 1985 and 1986.

IV.     Failure to Supervise or Train Deputies

It is unclear from the allegations of the second amended complaint whether ACA was charged with failure to train or supervise employees in this case. (Ct. R., Doc. 3, pp. 22-24.) The Court will address these allegations out of an abundance of caution. ACA asserts that it did not provide training for deputies or other staff members at the HCADC. (Ct. R., Doc. 79-2, p. 3.) This is outlined in the accreditation contract entered between ACA and the HCADC. (*Id.*, pp. 5-6.) When conducting an audit or assessment of a facility, ACA is present at the facility for a short period of time; in this case ACA was at HCADC from May 16-18, 2005, and did not return after those dates. (*Id.*, p. 3.)

An entity can only be found liable under 42 U.S.C. § 1983 for failure to train or supervise if the entity *itself* causes the constitutional violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *see Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). Not only are there no allegations that ACA failed to supervise or train the employees at issue in this lawsuit, ACA has established that it was under no duty or obligation to perform such training. Accordingly, the Court concludes that summary judgment on the claims for failure to supervise or train should be granted.

V.     Various State Law Claims

The plaintiffs assert that certain defendants should be found liable for alleged violations of certain state law torts.  These include negligent hiring, retention and failure to discipline; assault and battery; civil conspiracy; breach of non-delegable fiduciary duty, common law tort of outrage; intentional infliction of emotional distress; wrongful death; and slander and slander per se, in which none name ACA as an actor.  (Ct. R., Doc. 3, pp. 22-30).  In addition, the plaintiffs advance a claim for injunctive relief which does not name ACA.  (Ct. R., Doc. 3, pp. 31-33.)  The Court finds that ACA is entitled to summary judgment on these claims.

VI.     Third Party Beneficiary of ACA Contract

The plaintiffs assert that Jesse Lee Williams, Jr., was a third party beneficiary of the contract between ACA and the HCADC.  (Ct. R., Doc. 3, p. 31.)  The plaintiffs contend that ACA breached it contract with HCADC and Jesse Lee Williams, Jr., when ACA knew or should have known that HCADC was not operating according to ACA standards.  (*Id*.)

There does not appear to be an agreement in the contract between ACA and HCADC for ACA to uphold standards to the inmates.  (Ct. R., Doc. 79-2, pp. 5-6.)  Under Mississippi law, a stranger to a contract may enforce a promise made for his benefit which derives from the terms of the contract itself.  *Burns v. Washington Savings,* 251 Miss. 789, 171 So.2d 322, 324-6 (Miss. 1965).  A claim for a third party interest by a stranger to a contract will be supported under Mississippi law under the following conditions:

> (1) When the terms of the contract are expressly broad enough to include the third party either by name or as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

*Mississippi High Sch. Activities Ass'n, Inc. v. Farris By & Through Farris,* 501 So.2d 393, 396 (Miss. 1987).

In this case, there is no evidence that the agreement between ACA and HCADC was intended vest direct rights in individual inmates as third-party beneficiaries to the contract. In fact, no specific rights were mentioned in the contract, other than the procurement of accreditation by HCADC and the listing of HCADC as accredited in an annual summary. (Ct. R., Doc. 79-2, pp. 5-6.) ACA has not contracted to provide a service or a function traditionally provided by the state, but merely ACA sets standards for voluntary accreditation of correctional facilities. (*Id.*, p. 5.) Although the purpose of accreditation is to improve correctional facilities, there is no requirement that a facility seek accreditation. (*Id.*) The contract between ACA and HCADC was for the purpose of inspecting and accrediting the facility, and, other than accreditation, ACA has no power to enforce compliance with its standards. (*Id.*, pp. 5-6.) The Court, therefore, concludes that inmates at the HCADC can only be considered incidental beneficiaries of the contract between ACA and HCADC for accreditation. The Court further concludes that ACA is entitled to summary judgment on plaintiffs' claim of third-party beneficiary status. In summary, the Court finds that the defendant's motion for summary judgment on the claims advanced against it in this case should be granted.

Conclusion

Based upon the foregoing, this Court concludes that the defendant's motion to dismiss should be converted to a motion for summary judgment because matters outside the pleading were considered by the Court. The Court further finds that ACA's motion for summary judgment [79-1] should be granted. Any claims asserted against ACA shall be dismissed in their

entirety.  A separate judgment in conformity with and incorporating by reference the foregoing Memorandum Opinion will be entered this date.  Each party shall bear their respective costs associated with these motions.

**SO ORDERED AND ADJUDGED** this the 27th day of January, 2008.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE